Ramon **PORTILLO** and Dolores **Portillo**, Petitioners,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 90–4343.

United States Court of Appeals, Fifth Circuit.

June 11, 1991.

---

David Leeper, Leeper & Leeper, El Paso, Tex., for petitioners.

Abraham N.M. Shashy, Jr., Chief Counsel, I.R.S., Tax Litigation Div., Elizabeth Wickstrom, Gary R. Allen, Chief, Richard Farber, Appellate Sec., Tax Div., Dept. of Justice, Shirley D. Peterson, Asst. Atty. Gen., Washington, D.C., for respondent.

Before GOLDBERG, JOLLY and WIENER, Circuit Judges.

GOLDBERG, Circuit Judge:

Ramon Portillo appeals from the Tax Court's rejection of his challenge to a notice of deficiency from the Internal Revenue Service (the "I.R.S."). Portillo initially argues that the simple computerized matching of Portillo's employer's Form 1099 with Portillo's Form 1040 was not a "determination" as required by section 6212(a) of the Internal Revenue Code (the "Code"). We reject this argument, finding that the I.R.S. adequately linked Portillo to the alleged deficiency. We do agree with Portillo, however, that the notice of deficiency was arbitrary and erroneous because the I.R.S. failed to substantiate in any way its claim that Portillo received unreported income.

We readily affirm, however, the Tax Court's refusal to reconstruct Portillo's expenses for eighteen weeks in which Portillo was not able to document his expenditures. The Tax Court correctly determined that Portillo failed to meet his burden of proof that he actually incurred these expenses.

FACTS AND PROCEEDINGS BELOW

Ramon Portillo is a self-employed painting subcontractor who lived and worked in El Paso, Texas during 1984, the tax year in question. In 1984, Portillo bid for contracts to paint both residential and commercial property. According to Portillo, the general contractor he subcontracted for would pay him weekly, usually by check, for the work his crew performed. Portillo would then record his total receipts in the gross receipt portion of a ledger book he kept for his business. Since Portillo did not have a bank account, he would cash the contractor's check and then pay his workers in cash. Portillo kept a separate ledger to record his payroll expenses.

Typically, Portillo purchased all of his own supplies for his work. Portillo purchased most of these supplies from the Hanley Paint Store. Each Friday he would pay the supply store for the week's supplies and record these payments into the ledger as costs of goods sold. As a favor to Portillo, Hanley Paint Store kept copies of their invoices for these supplies, apparently with the intention that they would return them to Portillo each year end.

At the end of the year, Portillo would meet with Mrs. Rosales, a bookkeeper with Independent Businessman Bookkeeping and Tax Services, Inc., so that she could prepare his taxes. Portillo would total the gross receipts from his ledger and give them to Rosales as a basis for his Form 1040 gross income. Portillo used the Form 1099's from his various employers to confirm the gross receipts amounts. In 1984, however, Portillo had not received a 1099 from one of the contractors, Mr. Navarro,

when Rosales was preparing his Form 1040. Therefore, Portillo determined his gross receipts from Navarro solely from his ledger.

On his 1984 federal income tax return, Portillo reported gross receipts in the amount of $142,108.93 [1] and deductions of $30,917 for costs of goods sold. Included in the amount of gross receipts was $10,800 reported as the amount Navarro paid to Portillo. Sometime in mid–1985, Navarro filed a Form 1099 reporting payments to Portillo in the amount of $35,305, which was significantly more than Portillo had reported receiving from him.

In January 1987, the I.R.S. audited Portillo's 1984 tax return. At the time of the audit, Portillo could not produce any records or receipts concerning his gross receipts for 1984 because his ledger was stolen from his truck in 1985. In addition, Portillo was unable to produce invoices for materials and supplies purchased during eighteen weeks in 1984 because he had relied on Hanley Paint Store to save these for him and they apparently lost a portion of these invoices. Portillo claimed he had worked continuously during these eighteen weeks, except for holidays and during inclement weather.

Based on the discrepancy between Navarro's 1099 and Portillo's 1040 forms, I.R.S. Agent Shumate determined that Portillo had not reported $24,505 in income from Navarro. Although Portillo acknowledged that he inadvertently neglected to report $3,125 in income from Navarro, Portillo denied receiving any more than $13,925 from Navarro. Shumate contacted Navarro who could produce copies of checks paid to Portillo in the amount of $13,925, but could not produce records justifying the remaining $21,380 he claims he paid Portillo in cash.

Shumate used an indirect method of reconstructing Portillo's income and made an

adjustment to incorporate the increased amount into Portillo's income for the year. An I.R.S. reviewer, Glenda Jackson, analyzed Shumate's report. She did not believe the indirect method of confirming the income supported Shumate's adjustment. Jackson stated that there appeared to be several ways to follow up to check if the taxpayer could have received the cash, and she recommended that Shumate check Navarro's tax return.

Shumate replied to this review by stating that it was Portillo's burden to prove that he did not get the payments. The I.R.S. took the position that Navarro's Form 1099 was presumed correct. Therefore the I.R.S. issued a statutory notice of deficiency for federal income taxes of $8,473 for the taxable year 1984, plus penalties assessed under Code sections 6653(a)(1), (a)(2), and 6661(a).

The Portillos filed a petition for redetermination of this alleged tax deficiency in Tax Court. The Tax Court held for the government, finding that Portillo had not met his burden of proving that he had not received the additional income from Navarro. The Tax Court also found that Portillo failed to demonstrate that he was entitled to a deduction for costs of goods sold in excess of the amount allowed. In addition, the Tax Court upheld the penalties assessed under sections 6653(a)(1) & (2) and section 6661(a) of the Code. Portillo appeals these findings of the Tax Court. The Tax Court did, however, find that Mrs. Portillo was an innocent spouse for purposes of the tax and penalties.

## DISCUSSION

### A. *Unreported Income*

The Tax Court's interpretation of section 6212(a) of the Code is reviewable *de novo. See Rutter v. Commissioner,* 853

---

**1.** Portillo reported Schedule C gross receipts as follows:

| Source | Reported Receipts |
|---|---|
| Mata Drywall Co. | $ 1,804.00 |
| Ruben Gomez–Leon, Inc. | 15,984.05 |
| Winston Homes, Inc. | 95,447.88 |
| National Realsearch Corp. | 12,373.00 |
| Paul Leeper | $ 5,700.00 |
| Mike Navarro | 10,800.00 |

When the I.R.S. issued the statutory notice of deficiency, it reflected an adjustment showing that Portillo only received $570 from Paul Leeper in 1984, rather than the $5,700 reported.

F.2d 1267 (5th Cir.1988); *Scar v. Commissioner*, 814 F.2d 1363 (9th Cir.1987). Section 6212(a) states in part: "If the Secretary determines that there is a deficiency in respect of any tax imposed ... he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail." Section 6213(a) provides in part: "Within 90 days ... after the notice of deficiency authorized in section 6212 is mailed ... taxpayer may file a petition with the Tax Court for a redetermination of the deficiency." Therefore, the Tax Court only has jurisdiction when the Commissioner issues a valid deficiency notice and the taxpayer files a timely petition for redetermination. *Stamm Int'l Corp. v. Commissioner*, 84 T.C. 248, 252 (1985).

 Although there is no prescribed form for a deficiency notice, the notice must at a minimum (1) advise the taxpayer that the I.R.S. has determined that a deficiency exists for a particular year, and (2) specify the amount of the deficiency or provide the information necessary to compute the deficiency. *Donley v. Commissioner*, 791 F.2d 383 (5th Cir.1986). As Portillo correctly points out, in order for a notice of deficiency to be valid, the I.R.S. must have made a "determination" of a tax deficiency. *See* 26 U.S.C. § 6212(a). Portillo argues that in this case the I.R.S. failed to make such a "determination" and therefore the notice was invalid and the tax court consequently lacked jurisdiction.

Remarkably few cases have considered what requirements must be met before the I.R.S. can say that it has made a "determination." The courts which have dealt with this issue have held that a determination as contemplated by section 6212(a) means "a thoughtful and considered determination that the United States is entitled to an amount not yet paid." *Scar*, 814 F.2d at 1369 (quoting *Couzens v. Commissioner*, 11 B.T.A. 1040, 1159–60 (1928)). In *Terminal Wine Co. v. Commissioner*, 1 B.T.A. 697, 701 (1925), the Board of Tax Appeals construed the meaning of the term "determine" as applied to deficiency determinations as follows: "By its very definition and etymology the word 'determination' ir-

resistibly connotes consideration, resolution, conclusion, and judgment."

Portillo argues that in this case the I.R.S. failed to make a "determination" because the I.R.S. merely matched Navarro's Form 1099 with Portillo's Form 1040 without ever attempting to establish the reliability of Navarro's 1099 filing. According to Portillo, this lacked any indicia of a "thoughtful and considered determination" and therefore was insufficient under section 6212(a). The I.R.S. maintains, however, that all that is required for a determination is that the Commissioner consider information relating to the particular taxpayer. *See Scar*, 814 F.2d at 1368; *see also Abrams v. Commissioner*, 787 F.2d 939, 940–41 (4th Cir.), *cert. denied*, 479 U.S. 882, 107 S.Ct. 271, 93 L.Ed.2d 248 (1986); *Benzvi v. Commissioner*, 787 F.2d 1541, 1543 (11th Cir.), *cert. denied*, 479 U.S. 883, 107 S.Ct. 273, 93 L.Ed.2d 250 (1986).

In *Scar*, one of the few cases finding that the I.R.S. failed to make a determination, the Ninth Circuit held that the tax court should have dismissed the action for want of jurisdiction because the purported notice of deficiency revealed on its face that no determination of tax deficiency had been made. *Scar*, 814 F.2d at 1370. In *Scar* the Commissioner acknowledged that the notice of deficiency referred to a tax shelter that had no connection with the taxpayer's return. *Id.* at 1368. Consequently, it was apparent that the notice of deficiency was not the result of a determination based on the taxpayers' return. Therefore the court held that the Commissioner had failed to make a "determination."

 In contrast to *Scar*, in this case the I.R.S. did consider information directly relating to Portillo's income tax return. The I.R.S. also investigated somewhat whether a deficiency indeed existed. Therefore, this is not a case where the I.R.S. had no basis for sending the notice of deficiency; the I.R.S. did adequately link the deficiency to Portillo.

 Portillo argues that if this court should find that the Commissioner did in

fact make a substantive determination, the ensuing notice of deficiency was nevertheless arbitrary and erroneous. In addressing this argument, we begin with the well settled principle that the government's deficiency assessment is generally afforded a presumption of correctness. *See United States v. Janis*, 428 U.S. 433, 441, 96 S.Ct. 3021, 3025, 49 L.Ed.2d 1046 (1976); *Helvering v. Taylor*, 293 U.S. 507, 515, 55 S.Ct. 287, 290, 79 L.Ed. 623 (1935). This presumption is a procedural device that places the burden of producing evidence to rebut the presumption on the taxpayer. *See Janis*, 428 U.S. at 441, 96 S.Ct. at 3025; *Anastasato v. Commissioner*, 794 F.2d 884, 886 (3d Cir.1986). In essence, the taxpayer's burden of proof and the presumption of correctness are for the most part merely opposite sides of a single coin; they combine to require the taxpayer to prove by a preponderance of the evidence that the Commissioner's determination was erroneous. *Carson v. United States*, 560 F.2d 693, 695–96 (5th Cir.1977); *see also Janis*, 428 U.S. at 440, 96 S.Ct. at 3025; *Bar L Ranch, Inc. v. Phinney*, 426 F.2d 995, 998 (5th Cir.1970).

■■ In a Tax Court deficiency proceeding, like this one, once the taxpayer has established that the assessment is arbitrary and erroneous, the burden shifts to the government to prove the correct amount of any taxes owed. In a refund suit, on the other hand, the taxpayer bears the burden of proving both the excessiveness of the assessment and the correct amount of any refund to which he is entitled. *Carson*, 560 F.2d at 696; *see also Janis*, 428 U.S. at 440, 96 S.Ct. at 3025.

■ The presumption of correctness generally prohibits a court from looking behind the Commissioner's determination even though it may be based on hearsay or other evidence inadmissible at trial. *See Clapp v. Commissioner*, 875 F.2d 1396, 1402–03 (9th Cir.1989); *Zuhone v. Commissioner*, 883 F.2d 1317, 1326 (7th Cir.1989); *Dellacroce v. Commissioner*, 83 T.C. 269, 280

(1984). Justification for the presumption of correctness lies in the government's strong need to accomplish swift collection of revenues and in the need to encourage taxpayer recordkeeping. *Carson*, 560 F.2d at 696. The need for tax collection does not serve to excuse the government, however, from providing some factual foundation for its assessments. *Id.* "The tax collector's presumption of correctness has a herculean muscularity of Goliathlike reach, but we strike an Achilles' heel when we find no muscles, no tendons, no ligaments of fact." *Id.*

■ In this case we find that the notice of deficiency lacks any "ligaments of fact." As the Supreme Court has held, the presumption of correctness does not apply when the government's assessment falls within a narrow but important category of a "'naked' assessment without any foundation whatsoever...." *Janis*, 428 U.S. at 442, 96 S.Ct. at 3026. Several courts, including this one, have noted that a court need not give effect to the presumption of correctness in a case involving unreported income if the Commissioner cannot present some predicate evidence supporting its determination. *Carson*, 560 F.2d at 696; *Anastasato*, 794 F.2d at 887; *Weimerskirch v. Commissioner*, 596 F.2d 358, 360 (9th Cir.1979); *Pizzarello v. United States*, 408 F.2d 579 (2d Cir.), *cert. denied*, 396 U.S. 986, 90 S.Ct. 481, 24 L.Ed.2d 450 (1969). Although a number of these cases involved unreported *illegal* income, given the obvious difficulties in proving the non-receipt of income [2], we agree with the Third Circuit that this principle should apply whether the unreported income was allegedly obtained legally or illegally. *See Anastasato*, 794 F.2d at 887.

■ Therefore, before we will give the Commissioner the benefit of the presumption of correctness, he must engage in one final foray for truth in order to provide the court with some indicia that the taxpayer received unreported income. The Commissioner would merely need to attempt to

---

**2.** The Supreme Court has specifically noted that "as a practical matter it is never easy to prove a negative." *Elkins v. United States*, 364 U.S. 206,

218, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960); *see also Weimerskirch*, 596 F.2d at 361.

substantiate the charge of unreported income by some other means, such as by showing the taxpayer's net worth, bank deposits, cash expenditures, or source and application of funds. *See Weimerskirch,* 596 F.2d at 362. In these types of unreported income cases, the Commissioner would not be able to choose to rely solely upon the naked assertion that the taxpayer received a certain amount of unreported income for the tax period in question.

In this case the Commissioner's determination that Portillo had received unreported income of $24,505 from Navarro was arbitrary. The Commissioner's determination was based solely on a Form 1099 Navarro sent to the I.R.S. indicating that he paid Portillo $24,505 more than Portillo had reported on his return. The Commissioner merely matched Navarro's Form 1099 with Portillo's Form 1040 and arbitrarily decided to attribute veracity to Navarro and assume that Portillo's Form 1040 was false. Navarro, however, was not able to document $21,380 of cash payments he allegedly made to Portillo. In a situation like this, the Commissioner had some duty to investigate Navarro's bald assertion of payment and determine if Navarro's position was supported by his books, receipts, or other records.

In addition, the Commissioner failed to substantiate by any other means, such as analyzing Portillo's cash expenditures or his source and application of funds, his charge that Portillo received unreported income. Instead, the Commissioner merely chose to rely upon the presumption of correctness. We hold in situations like this involving unreported income, the presumption of correctness does not apply to the notice of deficiency.

In summary, we find that the Tax Court had jurisdiction to consider this case because the Commissioner did issue a valid deficiency notice. However, since the Commissioner failed to substantiate his charge that Portillo received cash payments from Navarro, the deficiency determination is clearly arbitrary and erroneous. Therefore, the judgment below regarding unreported income must be reversed.

### B. *Deduction for Cost of Goods Sold*

Portillo claimed a deduction for the cost of goods sold in his painting business in the amount of $30,917. The I.R.S. disallowed $7,462 of this deduction because Portillo could not substantiate expenditures for eighteen weeks. According to Portillo, he was not able to document these expenditures because the paint supply store misplaced his invoices.

On appeal, Portillo argues that the Tax Court should have allowed him a reasonable reconstruction or estimate of the expenses attributable to the missing eighteen weeks. In support of his argument, Portillo cites *Cohan v. Commissioner,* 39 F.2d 540, 543–44 (2d Cir.1930), which provides the court with discretion to estimate the allowable deduction if there is sufficient evidence to support the contention that the expenses were in fact incurred. The taxpayer clearly bears the burden of proof in substantiating claimed deductions. *Patton v. Commissioner,* 799 F.2d 166, 170 (5th Cir.1986); *C.A. White Trucking Co. v. Commissioner,* 601 F.2d 867, 869 (5th Cir. 1979). Therefore, Portillo was required to substantiate claimed deductions for cost of goods sold in excess of the amount the Commissioner allowed.

The Tax Court found that Portillo's explanation about the missing invoices was not credible. The Tax Court's determination that a taxpayer has failed to come forward with sufficient evidence to support a deduction is a factual finding subject to reversal only if found to be clearly erroneous. *Sandvall v. Commissioner,* 898 F.2d 455, 458 (5th Cir.1990). We find that the Tax Court's determination regarding Portillo's claimed deductions was not clearly erroneous.

Portillo argues that his testimony that he worked every week of the year, except for vacations and inclement weather, supports his position that the court should have allowed him a reasonable reconstruction of expenses. In addition, Portillo points out that he produced paychecks from the periods in which invoices are missing, and he

paid his employees during the eighteen weeks in question.

As the Tax Court correctly pointed out, however, nothing in the record proves that Portillo did in fact work during those weeks, or that if he did work, that he purchased supplies. No one from the paint supply house testified that Portillo purchased supplies during those weeks, and Portillo failed to produce any records indicating the quantity of supplies supposedly used during those weeks. Since the record is utterly devoid of any evidence that Portillo purchased supplies on a weekly basis in a uniform amount, Portillo failed to meet his burden of proof and the Tax Court correctly refused to apply the *Cohan* rule of reconstruction.

### C. *Penalties*

■ Finally, Portillo argues that he acted reasonably and therefore the Tax Court erred in finding him liable for additions to his tax under sections 6653 and 6661 [3] of the Code. Under Section 6653, the I.R.S. may penalize taxpayers for any underpayment due to negligence or disregard of rules and regulations.[4] "Negligence" includes any failure to reasonably attempt to comply with the tax code, including the lack of due care or the failure to do what a reasonable or ordinarily prudent person would do under the circumstances. *Heasley v. Commissioner*, 902 F.2d 380, 382 (5th Cir.1990); *Marcello v. Commissioner*, 380 F.2d 499 (5th Cir.1967), *cert. denied*, 389 U.S. 1044, 88 S.Ct. 787, 19 L.Ed.2d 835 (1968).

■ The Tax Court findings of negligence are reviewed on appeal under the clearly erroneous rule. *Masat v. Commissioner*, 784 F.2d 573 (5th Cir.1986). In addition, the taxpayer has the burden of proving that the penalty was erroneous. *Sandvall v. Commissioner*, 898 F.2d 455, 459 (5th Cir.1990).

■ Even though we have reversed the Tax Court's holding on the issue of Portillo's unreported income, we nevertheless find that the Tax Court properly held that the additions imposed under section 6653 were appropriate with regards to the cost of goods sold deduction. The Tax Court found that Portillo deducted amounts for costs of goods sold that were not supported by documentation or other evidence. This court previously has recognized that a negligence penalty is correctly assessed in cases where deductions claimed on returns are not supported by the facts. *See, e.g., Sandvall*, 898 F.2d at 459. In this case, Portillo failed to fulfill his statutory obligation to maintain adequate records of his business expenditures. *See* 26 U.S.C. § 6001. His reliance on the paint supplier to keep track of his sales invoices cannot satisfy the statutory requirement that he keep adequate records. Therefore, Portillo failed to acquit his burden of establishing that his failure to adequately substantiate these deductions was not due to negligence or the intentional disregard of the tax rules.

### CONCLUSION

The portion of the Tax Court's judgment regarding the unreported income is REVERSED. The portion of the Tax Court's judgment regarding the cost of goods sold

---

**3.** We will not address the penalty assessed under section 6661 at this time. Section 6661(a) provides for an addition to tax equal to twenty-five percent of an underpayment attributable to a substantial understatement of income tax for any taxable year. Section 6661(b)(1) defines a substantial understatement of income tax as an understatement which exceeds the greater of ten percent of the tax required to be shown on the return for that year or $5,000. Due to the fact that the Tax Court must readjust Portillo's tax liability on remand, we leave this issue open for the Tax Court.

**4.** Section 6653(a)(1) imposes an addition to tax if any part of an underpayment is due to negligence or disregard of rules and regulations. Section 6653(a)(2) imposes an addition to tax in the amount of fifty percent of the interest due on the portion of an underpayment attributable to negligence. 26 U.S.C. § 6653(a) defines negligence as follows:

(3) Negligence.—For purposes of this subsection, the term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of this title, and the term "disregard" includes any careless, reckless, or intentional disregard.

deduction is AFFIRMED. The judgment is REMANDED for the limited purpose of recalculating the net tax, interest and penalties due from Portillo in accordance with this opinion.