**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-60252

Jung K. and Hee S. YOON,

Petitioners-Appellants,

VERSUS

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

Appeal from the Decision of the United States Tax Court

March 6, 1998

Before REYNALDO G. GARZA, DUHÉ, and STEWART, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

The Internal Revenue Service ("IRS") used the net worth plus personal living expenses method to determine the Yoons' unreported income. The Tax Court modified this determination in part, and sustained it in part. The Yoons claim error in the determination of their nondeductible personal living expenses, and in the Tax Court's refusal to reduce their opening net worth by the amount of certain credit card liabilities. We find that the Tax Court did not err in the determination of the Yoons' nondeductible personal living expenses. We do find error, however, in the Tax Court's imposition on the Yoons of the burden of establishing an opening net worth. As such, we vacate that portion of the Tax Court's opinion and remand for a redetermination of the Yoons' opening net worth and the resultant deficiencies and additions to tax.

### *Factual and Procedural Background*

A.      **The Yoons and JKY, Inc.**

During 1989, 1990, and 1991, Jung K. Yoon and Hee S. Yoon, husband and wife, owned

1

and operated a general merchandise store in South El Paso under the name L.A. Trading, which specialized in low-cost items. Most of L.A. Trading's customers came into the United States from Juarez, Mexico. The Tax Court found that during those years, Mr. Yoon worked 14 hours a day, 7 days a week, and never took a vacation.

In 1989, the Yoons operated L.A. Trading as a sole proprietorship. On January 31, 1990, the Yoons incorporated Jung K. Yoon, Inc. ("JKY"), electing treatment as an S corporation. JKY operated the merchandise business that the Yoons had previously operated as a sole proprietorship. During 1990 and 1991, the Yoons owned 100% of the stock of JKY. By the end of 1995, the Yoons closed L.A. Trading due to the downturn in the Mexican economy and the devalued peso.

JKY's suppliers were mainly Korean-owned businesses located primarily in Los Angeles, California. Occasionally, Mr. Yoon entertained JKY's suppliers in hopes of getting better prices and better payment plans. JKY purchased over $1 million in inventory during each of the years in issue. Mr. Yoon frequently traveled to Los Angeles to purchase merchandise. Mr. Yoon also traveled to Las Vegas, Nevada, two or three times each year to attend trade shows and to purchase merchandise. Mr. Yoon has no relatives in Los Angeles or Las Vegas.

The Yoons maintained several personal and business accounts in at least two banks during 1989, 1990, and 1991. The Yoons' children also maintained bank accounts during those years.

The Yoons acquired four properties during the 1989-91 period for purchase prices totaling more than $1.5 million. The Yoons took several loans from various lenders for these purposes totaling almost $1.1 million, including an $80,000 loan from Jae Gilpen in 1989. The Yoons also incurred debt related to their purchase of several automobiles during the same period.

The Yoons had personal credit card balances of $20,521.99 as of December 31, 1989, $16,413.37 as of December 31, 1990, and $26,075.24 as of December 31, 1991.

## B.    The Yoons' Income Tax Returns

Patrick Caufield prepared the Yoons' 1989 Form 1040, U.S. Individual Income Tax

Return (jointly filed on a cash basis), and JKY's 1990 Form 1120S, U.S. Income Tax Return for an S Corporation. Caufield did not review the tax returns with the Yoons because of difficulty communicating with them due to language barriers (the Yoons immigrated to the United States from Korea in 1975 and apparently speak mainly Korean). Thomas Hwang prepared the Yoons' 1990 and 1991 Forms 1040 (jointly filed on a cash basis) and JKY's 1991 Form 1120S.

Caufield and Hwang did not use the cash register tapes from the business when calculating the amount of gross receipts reported on the Yoons' and JKY's returns. Instead, they used monthly written statements of JKY's gross receipts, which the Yoons prepared.

## C. The IRS Revenue Agent's Examination of the Yoons' Returns

During an examination of the Yoons' returns, the IRS requested bank receipts and other documents from the Yoons. The Yoons did not produce check registers or all of the bank statements and canceled checks from their various accounts or other records necessary for the revenue agent to adequately determine their taxable income. Consequently, the IRS reconstructed the Yoons' income using the net worth method for 1989 and the bank deposits method on JKY combined with the net worth method on the Yoons personally for 1990 and 1991.

The net worth method calculates income by determining a taxpayer's net worth at the beginning and end of a period. The difference is the increase in net worth. An increase in net worth, plus nondeductible expenditures (such as personal living expenses), less nontaxable receipts, may be considered taxable income. If the resulting figure for any year is substantially greater than the taxable income reported by the taxpayer for that year, the IRS claims the excess represents unreported taxable income. *See Holland v. United States*, 348 U.S. 121, 125 (1954).

For the year 1989, the IRS determined that the Yoons spent $124,929 on personal living expenses and had a total of $158,166 in unreported income:

| | |
|---|---|
| Net Worth at end of 1989 | $505,106 |
| (Net Worth at end of 1988) | (299,653) |
| Change in Net Worth | $205,453 |

3

| | |
|---|---|
| Personal Living Expenses | 124,929 |
| Adjusted Gross Income as Corrected | $330,382 |
| (Adjusted Gross Income per Return) | (172,216) |
| 1989 Unidentified Income | $158,166 |

For 1990, the IRS determined that the Yoons spent $138,810 on personal living expenses and had $208,261 of unreported income:

| | |
|---|---|
| Net Worth at end of 1990 | $629,844 |
| (Net Worth at end of 1989) | (505,106) |
| Change in Net Worth | $124,738 |
| Personal Living Expenses | 138,810 |
| (Cash Withdrawal from JKY Capital Account) | (18,000) |
| Adjusted Gross Income as Corrected | $245,548 |
| (Adjusted Gross Income per Return) | (37,287) |
| 1990 Unidentified Income | $208,261 |

For 1991, the IRS determined that the Yoons spent $186,248 on personal living expenses and had $205,562 of unreported income:

| | |
|---|---|
| Net Worth at end of 1991 | $1,008,268 |
| (Net Worth at end of 1990) | (611,844) |
| Change in Net Worth | $396,424 |
| Personal Living Expenses | 186,248 |
| (Cash Withdrawal from JKY Capital Account) | (133,100) |
| Adjusted Gross Income as Corrected | $499,572 |
| (Adjusted Gross Income per Return) | (244,010) |
| 1991 Unidentified Income | $205,562 |

Accordingly, The IRS determined and assessed the following deficiencies and additions to tax against the Yoons:

*Additions to Tax*

| Year | Deficiency | § 6651(a)(1) Delinquency Penalty | § 6663(a) Civil Fraud Penalty |
|---|---|---|---|
| 1989 | $47,002 | -- | $35,251 |
| 1990 | 76,128 | -- | 56,528 |
| 1991 | 83,068 | $9,071 | 61,157 |

**D.     The Tax Court**

The Yoons filed a timely petition in Tax Court.  At trial on December 5, 1995, the IRS conceded the fraud penalties under § 6663, instead asserting negligence penalties under § 6662(a). The IRS also conceded a $38,000 adjustment for 1990.

The Yoons and their C.P.A., Caufield, prepared their own analysis of personal living expenses which reflected $48,719 spent on personal living expenses in 1989, $97,860 in 1990, and $94,106 in 1991.  Initially,  the government successfully objected to the introduction of this analysis at trial, but during the trial, the Yoons' counsel offered to waive all objections to the government's exhibits if the government would withdraw its objections to the Yoons' exhibits, including the Yoons' personal living expense analysis.  The government accepted this offer after trial, but noted that the acceptance did not constitute agreement that the Yoons' analysis was accurate.

After trial, the Tax Court issued its opinion upholding the Commissioner's determinations in part.  The IRS filed computations pursuant to Tax Court Rule 155, to which the Yoons objected.  On January 15, 1997, the Tax Court entered a decision redetermining the taxes and penalties based on those computations:

*Additions to Tax*

| Year | Deficiency | § 6651(a)(1) Delinquency Penalty | § 6662(a) Negligence Penalty |
|---|---|---|---|
| 1989 | $43,977 | -- | $8,795 |
| 1990 | 58,150 | -- | 11,630 |
| 1991 | 52,351 | $13,087 | 10,470 |

The Yoons appealed to this Court, which has jurisdiction pursuant to 26 U.S.C. §

7482(a)(1) ("The United States Courts of Appeals . . . shall have exclusive jurisdiction to review the decisions of the Tax Court, except as provided in section 1254 of Title 28 of the United States Code, in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury . . . ."). The Yoons argue that the Tax Court clearly erred by sustaining the IRS' computation of their personal living expenses, and that the Tax Court erred as a matter of law by failing to reduce their net worth as of December 31, 1989 by $20,521, which the Tax Court found the Yoons owed on credit card liabilities as of December 31, 1989.

*Discussion*

**A.      Standard of Review and the Presumption of Correctness**

This Court reviews the Tax Court's approval of the IRS Commissioner's determination of taxable income under the clearly erroneous standard of review. *Webb v. Commissioner of Internal Revenue*, 394 F.2d 366, 372 (5th Cir. 1968). Similarly, this Court reviews the Tax Court's finding that a taxpayer has failed to come forward with sufficient evidence to support a deduction under the clearly erroneous standard of review. *Sandvall v. Commissioner of Internal Revenue*, 898 F.2d 455, 458 (5th Cir. 1990).

Furthermore, it is well settled that the courts afford IRS determinations of deficiency a presumption of correctness. *E.g., United States v. Janis*, 428 U.S. 433, 440-41 (1976); *Helvering v. Taylor*, 293 U.S. 507, 515 (1935); *Portillo v. Commissioner of Internal Revenue*, 932 F.2d 1128, 1133 (5th Cir. 1991); *Webb*, 394 F.2d at 372. To rebut this presumption, the taxpayer bears the burden of proving by a preponderance of the evidence that the determination is arbitrary or erroneous. *Portillo*, 932 F.2d at 1133.

**B.      The Tax Court erroneously placed the burden of establishing an opening net worth on the Yoons; therefore, the Tax Court's refusal to reduce the Yoons' 1989 net worth for $20,521 was erroneous as a matter of law.**

The Tax Court erred by not reducing the Yoons' 1989 net worth for $20,521 of credit card liabilities existing at the end of 1989. Under the net worth method, "an essential condition . . . is the establishment, with reasonable certainty, of an opening net worth, to serve as a starting

**6**

point from which to calculate future increases in the taxpayer's assets." *Holland*, 348 U.S. at 132; *Curtis v. Commissioner of Internal Revenue*, 623 F.2d 1047, 1049 (5th Cir. 1980) (explaining that "in a net worth case, the Government, having concluded that the taxpayer's records are inadequate as a basis for determining income tax liability, attempts to establish an 'opening net worth' or total net value of the taxpayer's assets at the beginning of a given year."). It is clear that the government bears the burden of establishing the opening net worth with reasonable certainty. *United States v. Smith*, 890 F.2d 711, 713 (5th Cir. 1989) ("Essential to this [net worth] methodology is the taxpayer's opening net worth. The government must prove the taxpayer's opening net worth . . . with reasonable certainty."); *Campfield v. Commissioner of Internal Revenue*, T.C. Memo 1996-383, 1996 WL 467816, 72 T.C.M. (CCH) 425 (U.S. Tax Ct. 1996) ("[I]n light of the standards set forth in *Holland v. United States*, 348 U.S. 121 (1954), and *United States v. Massei*, 355 U.S. 595 (1958) . . . the Commissioner must establish, with reasonable certainty, an opening net worth as a starting point from which to calculate future increases in the taxpayer's assets."), *aff'd,* ___ F.3d ___, 1997 WL 829260 (2d Cir. 1997).

Accordingly, the Tax Court erred when it placed the burden of establishing an opening net worth on the Yoons. The Tax Court held: "Petitioners failed to provide any reliable evidence from which we can establish or even estimate their credit card liabilities as of December 31, 1988, or January 1, 1989[.] Thus, we cannot adjust respondent's net worth determination for 1989 by any credit card liabilities." This ruling flies in the face of the necessary condition of the net worth method that the government establish an opening net worth with reasonable certainty.

Essentially, the Tax Court's ruling and the IRS' assessment amount to an arbitrary increase in the Yoons' opening net worth based on the *absence* of evidence of that amount at the end of 1989 and, as such, the presumption of correctness does not apply. As this Court explained in *Portillo*, "[i]n these types of unreported income cases, the Commissioner would not be able to choose to rely solely upon the naked assertion that the taxpayer received a certain amount of unreported income for the tax period in question." 932 F.2d at 1134. In other words, the IRS

7

may not rely solely on the presumption of correctness. *See Carson v. United States*, 560 F.2d 693, 697-698 (5th Cir. 1977) (upholding determination that taxpayer had wagering income, but disallowing similar determination for earlier periods where Commissioner relied solely on presumption of correctness for earlier period). Accordingly, this ruling was erroneous as a matter of law.

The government's asserted explanations for the failure to consider the Yoons' 1989 credit card liabilities fall far short of the mark. At oral argument, the government acknowledged that "the IRS does have to establish opening net worth." The government next correctly pointed out that the case law in this area does not require mathematical precision in the IRS' determination of opening net worth; however, as noted, the cases do require "reasonable certainty," which at least requires more than the IRS' mere assumption of the existence of income. *See Holland*, 348 U.S. at 132; *Campfield*, T.C. Memo 1996-383, 1996 WL 467816, 72 T.C.M. (CCH) 425 (U.S. Tax Ct. 1996).

The government's asserted line of reasoning would impermissibly shift the burden of proving an opening net worth away from the IRS and onto the taxpayers. The government's attorney argued that the IRS was justified in not considering the 1989 credit card balances because "that may have been the same balance that [the Yoons] had at beginning of 1989, and [the Yoons] didn't produce any evidence on that." Refusing to consider the Yoons' liabilities at the end of the first year at issue is the same as simply adding the amount of those liabilities to the Yoons' opening net worth for purposes of determining a change in net worth.

We cannot and will not condone such an end-run around the government's clearly established burden of proof. As the Supreme Court has observed, "[w]hile we cannot say that the[] pitfalls inherent in the net worth method foreclose its use, they do require the exercise of great care and restraint." *Holland*, 348 U.S. at 129. The Court clearly instructed that when reviewing net worth determinations, "[a]ppellate courts should review the cases, bearing constantly in mind the difficulties that arise  when circumstantial evidence as to guilt is the chief

**8**

weapon of a method that is itself only an approximation." *Id.*

In contrast to the government's position at oral argument, *Carson* does not support the IRS' arbitrary refusal to consider the 1989 credit card balances in its determination of the Yoons' opening net worth. *Carson*, which involved wagering income, reinforced the government's obligation to provide some factual foundation for its assessments: "While we realize the difficulties the Commissioner encounters in assessing deficiencies in circumstances such as are presented here, we nevertheless must insist that the Commissioner provide some predicate evidence connecting the taxpayer to the charged activity if effect is to be given his presumption of correctness." 560 F.2d at 697 (citing *Gerardo v. Commissioner of Internal Revenue*, 552 F.2d 549, 554 (3d Cir. 1977)).

Where the burden lies on the government to produce some factual predicate for an assessment, the government may not discharge that burden simply by imposing a naked assessment and then pointing out that the taxpayers did not produce evidence to rebut that assessment. *Janis*, 428 U.S. at 441. Taxpayers do bear the burden of maintaining accounting records which enable them to file a correct tax return, *e.g., Webb*, 394 F.2d at 371, and in the absence of such records the IRS may compute the taxpayer's income by any reasonable method that clearly reflects income, 26 U.S.C. § 446(b) (1997); however, a tax determination without rational foundation is "not properly subject to the usual rule with respect to the burden of proof in tax cases." *Janis*, 428 U.S. at 441 (citing *Helvering v. Taylor*, 293 U.S. 507, 514-515 (1935)). As this Court eloquently noted in *Carson*: "The tax collector's presumption of correctness has a herculean muscularity of Goliathlike reach, but we strike an Achilles' heel when we find no muscles, no tendons, no ligaments of fact." 560 F.2d at 696; *see also Portillo*, 932 F.2d at 1133 ("In these types of unreported income cases, the Commissioner would not be able to choose to rely solely upon the naked assertion that the taxpayer received a certain amount of unreported income for the tax period in question.").

C. **The Tax Court's ruling sustaining most of the IRS revenue agent's**

**determinations of the Yoons' personal living expenses was not clearly erroneous.**

The IRS revenue agent's determinations of the Yoons' personal living expenses, as modified by the Tax Court, were not arbitrary or erroneous; therefore, the presumption of correctness applies, and the Tax Court's rulings in that regard were not clearly erroneous. As stated, taxpayers must maintain accounting records which enable them file a correct tax return. *E.g., Webb*, 394 F.2d at 371. Where a taxpayer keeps no books, or keeps books that are inadequate, Internal Revenue Code § 446(b) authorizes the IRS to compute the taxpayer's income by any reasonable method that clearly reflects income. 26 U.S.C. § 446(b) (1997); *see also Woodall v. Commissioner of Internal Revenue*, 964 F.2d 361, 364 (5th Cir. 1992) (approving use of bank deposits plus cash expenditures method of calculating income). The taxpayer bears the burden of demonstrating "any unfairness or inadequacy in the method." *Id.* The presumption of correctness applies here, because the IRS attempted to substantiate the charges of unreported income "by some other means, such as by showing the taxpayer's net worth, bank deposits, cash expenditures, or source and application of funds." *Portillo*, 932 F.2d at 1133-34.

1.     **The IRS' application of a 10% discount to determine the Yoons' 1989 personal living expenses was not clearly erroneous**.

The IRS' implementation of a 10% discount to determine the Yoons' 1989 personal living expenses was justified as a reasonable method of calculation that clearly reflects income. 26 U.S.C. § 446(b) (1997); *see also Woodall*, 964 F.2d at 364. At trial, the Yoons offered their own calculation of personal living expenses, which also based the 1989 personal living expenses on a 10% discount of the 1990 personal living expenses. The Yoons' 1990 figure was considerably lower than the IRS' 1990 figure, but the Yoons' use of a 10% discount belies their argument that the IRS' use of that discount was arbitrary and capricious.

2.     **The Tax Court's refusal to subtract certain expenditures allegedly not incurred in 1989 from the Yoons' 1990 personal living expenses prior to applying the 10% discount was not clearly erroneous.**

The Tax Court's refusal to accept the Yoons' calculation of their 1990 personal living

expenses for purposes of applying a discount to determine 1989 personal living expenses was not clearly erroneous. The Yoons argue that they incurred certain expenditures in 1990 that they did not incur in 1989, namely $24,265 in income taxes and $18,000 in life insurance premiums. The Yoons argue that the IRS should have applied the discount to their 1990 personal living expenses less these expenditures. The Tax Court noted, however, that the Yoons offered no explanation for their failure to produce any books and records for 1989. Although the Yoons offered their accountant's summary of 1989 personal living expenses, the summary itself amounts to nothing more than a handwritten assertion, without any substantiating documentation, that the income tax and life insurance payments did not exist in 1989. Accordingly, the court had no way of corroborating the Yoons' assertion that they did not incur these expenses in 1989.

The computation of personal living expenses is qualitatively different from the establishment of an opening net worth, of which the government bears the burden of producing some evidence. *See Toledano v. Commissioner of Internal Revenue*, 362 F.2d 243, 246 (5th Cir. 1966) ("As to the amount of the living expenses, the Commissioner relies on his presumption of correctness. In the absence of rebutting evidence or a showing such evidence would be more than usually difficult to obtain, the Tax Court was justified in finding the presumption of correctness was not overcome.") (citations omitted). We have already found that the IRS' use of a 10% discount to determine 1989 personal living expenses was not arbitrary. The Yoons cannot overcome the reasonableness of that method merely by asserting the nonexistence of certain expenses in 1989 when the very reason for the use of a 10% discount was the absence of records for 1989. This is especially true in light of the presumption of correctness in favor of the government. Based on the record, the Tax Court's finding that the Yoons failed to produce "any books and records" for 1989 and did not explain that failure was not clearly erroneous; therefore, the Tax Court correctly sustained the IRS' determination of 1989 personal living expenses.

    **3.**    **The Tax Court's ruling sustaining the IRS revenue agent's classification of certain unidentified expenses as personal living expenses was not clearly erroneous**.

The IRS agent's classification as personal living expenses of the $17,411 discrepancy between the Yoons' 1990 bank statements and the checks that the Yoons provided was not arbitrary or erroneous. The Tax Court noted the revenue agent's testimony that this amount represented "the difference between the bank account balances and the analysis of personal living expenses for 1990 *provided to respondent [IRS] by petitioners [the Yoons]*." The Tax Court also noted the agent's testimony that the Yoons did not provide any explanations or canceled checks to support any other treatment of this amount, and that the Yoons "also failed to offer any explanation of the difference . . . ." *Id.*

The Tax Court's findings in this regard are supported by the record, and the Yoons have not identified any contrary evidence in the record that would render the Tax Court's findings clearly erroneous. The Yoons assert that the revenue agent classified this amount as personal living expenses without any consideration of the purpose of the expenditures; however, as noted, in order to overcome the government's presumption of correctness, the Yoons bear the burden of producing adequate records for determining income. Allocation of this amount as personal living expenses was reasonable; therefore, the Tax Court's finding that the Yoons failed to meet their burden is not clearly erroneous. *See Toledano*, 362 F.2d at 246.

Similarly, the Yoons' argument that the IRS arbitrarily classified other unidentified expenses as personal living expenses must also fail. The Tax Court found that the Yoons failed to identify the specific instances when this occurred and failed to offer any proof that these expenses were not personal living expenses. This finding was not clearly erroneous. As such, the Yoons failed to meet their burden of providing accurate records as to these expenses; therefore, it was reasonable for the IRS to classify these expenses as personal living expenses. *See Toledano*, 362 F.2d at 246.

**4.      The Tax Court's ruling sustaining the IRS revenue agent's classification of the Yoons' personal credit card payments as personal living expenses was not clearly erroneous.**

The Yoons also take issue with the Tax Court's treatment of all payments on personal

**12**

credit cards as personal living expenses; however, as the Tax Court noted, the Yoons did not produce evidence sufficient to support treatment of these expenses as business deductions. The Yoons argue that some of these payments represented personal business expenses. As evidence of the business nature of these expenses, the Yoons point to the Tax Court's own findings of fact that Mr. Yoon never took a vacation, that JKY's suppliers were located primarily in Los Angeles, that Mr. Yoon occasionally entertained JKY's suppliers for business purposes, that Mr. Yoon traveled to Las Vegas for business purposes, and that Mr. Yoon had no relatives in Los Angeles or Las Vegas.

The Tax Court did not clearly err when it determined that the schedules of credit card charges that the Yoons' accountant, Caufield, prepared were not reliable and did not support treatment of these expenses as deductible business expenses. In order to prove entitlement to deductions for travel and entertainment expenses, a taxpayer must meet the specific substantiation requirements of § 274(d), including the date, time, place, amount, and business purpose of the expense, as well as the business relationship between the taxpayer and the people he or she entertained. 26 U.S.C. § 274(d); *see Dowell v. United States*, 522 F.2d 708, 714 (5th Cir. 1975), *cert. denied*, 426 U.S. 920 (1976); *see also* 26 U.S.C. § 274(n) (1982) (limiting travel and entertainment deductions to 80% for the years 1989, 1990, and 1991) (pre-1993 amendment).

The Tax Court's analysis of § 274(d)'s substantiation requirements was not inconsistent with its findings of fact so as to render that analysis clearly erroneous. The Tax Court noted that the underlying credit card statements were not part of the record in this case, and that the Yoons' schedules themselves showed that certain statements were not available when Caufield prepared the schedules. Furthermore, the court noted that the Yoons had not indicated which expenditures they had already deducted on JKY's 1990 and 1991 returns. These circumstances justify the Tax Court's conclusion that the Yoons' proffered evidence of entitlement to business expense deductions was not reliable.

The Yoons urge that the alleged business nature of these expenses is relevant only to a

calculation of personal living expenses, which they argue is qualitatively different from a deduction and, therefore, does not require substantiation; however, we view this as a distinction without a difference. The Yoons' failure to maintain adequate records necessitated the government's use of the net worth plus personal living expenses method of calculating income. They cannot thereafter claim that the same failure to produce records somehow exempts them from the substantiation requirements of § 274(d). At any rate, § 274(d) requires substantiation for a "deduction or credit." Under the net worth plus personal living expenses method of calculating income, personal living expenses are evidence of income, therefore, arguing for a business expense credit or deduction under that method is no different from arguing for such a deduction or credit when calculating income by some other method. As such, § 274(d)'s substantiation requirements clearly apply to the Yoons' assertion of business expenses.

Furthermore, we reject the alternative argument that, if § 274(d)'s substantiation requirements do apply, the Yoons qualify for an exception to those requirements. At oral argument, the Yoons' attorney raised 26 C.F.R. § 1.274-5T(c)(3), which allows for substantiation by other sufficient evidence where a taxpayer has not obtained adequate records, and 26 C.F.R. § 1.274-5T(c)(4), which governs substantiation in exceptional circumstances, i.e., where the inherent nature of the situation prevents the taxpayer from obtaining adequate records or other sufficient evidence. The exception for substantiation by "other sufficient evidence" requires corroborative evidence sufficient to establish the substantiation elements. 26 C.F.R. § 1.274-5T(c)(3) (1997). The exception for exceptional circumstances requires corroboration by evidence possessing the "highest degree of probative value possible under the circumstances." 26 C.F.R. § 1.274-5T(c)(4) (1997). As previously noted, however, the Tax Court did not clearly err when it determined that the Yoons' proffered corroborative evidence was not reliable. As such, the Yoons are unable to satisfy the corroborative evidence requirements of §§ 1.274-5T(c)(3) and 1.274-5T(c)(4).

**5.  The Tax Court's ruling regarding payments in excess of $80,000 to Gilpen, a known creditor, was not clearly erroneous.**

**14**

The Yoons' argument that the revenue agent arbitrarily treated $38,321 of payments in 1991 to Gilpen, a known creditor, as personal living expenses is unclear and conclusory. The IRS recognized an $80,000 loan from Gilpen, and classified it as a liability. The Yoons argued before the Tax Court that there was an additional $40,000 loan from Gilpen. The court found that there was no evidence of this second loan, other than Mr. Yoon's uncorroborated testimony. The court did, however, note the existence of canceled checks reflecting $109,320 of payments to Gilpen in 1991. Accordingly, the Tax Court held that the Yoons were entitled to a $29,320 interest deduction in 1991, representing the difference between the amount paid to Gilpen and the $80,000 loan which the IRS recognized as a liability. There is no reference in the Tax Court opinion to any other payments to Gilpen, and the Yoons' citation to the Tax Court transcript does not support the existence of the second loan. As such, the Tax Court did not err. Actually, the Tax Court corrected the IRS revenue agent's determination by allowing deductions for all 1991 payments to Gilpen of which the Tax Court had evidence, thereby making the Yoons' argument based on the arbitrariness of the revenue agent's classification a moot point.

### *Conclusion*

The Tax Court's rulings sustaining the IRS' determination of the Yoons' personal living expenses were not clearly erroneous; however, the Tax Court did erroneously impose the burden of establishing an opening net worth on the Yoons. Accordingly, we hereby vacate that portion of the Tax Court's opinion and remand to the Tax Court for a redetermination of the Yoons' opening net worth and the resultant deficiencies and additions to tax.