# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-60245
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

May 19, 2014

Lyle W. Cayce
Clerk

BRUCE GUNKLE; SHERILYN S. GUNKLE,

Petitioners-Appellants

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee

Appeal from the Decision
of the United States Tax Court
No. 5650-11

Before WIENER, OWEN, and HAYNES, Circuit Judges.

WIENER, Circuit Judge.

Petitioners-Appellants, Bruce and Sherilyn S. Gunkle, husband and wife (together, "the Gunkles"), appeal the judgment of the United States Tax Court ("Tax Court") rendered pursuant to Section 7483 of the Internal Revenue Code ("I.R.C."). They seek reversal of that judgment, which sustained the determination of Respondent-Appellee, the Commissioner of Internal Revenue ("Commissioner"), that the Gunkles had an income tax deficiency and an accuracy-related addition to tax for 2007 as the result of unreported income and disallowed deductions for charitable contributions. We affirm.

No. 13-60245

# I.   FACTS AND PROCEEDINGS

## A.   Facts

Bruce is a graduate of the United States Naval Academy and holds a master's degree in theology from Antioch University.  After he retired from the military, he and Sherilyn settled in Texas.  Bruce incorporated the City of Refuge Christian Fellowship, Inc. ("City of Refuge, Inc.") in 1990 as a Texas non-profit corporation, exempt from federal taxes under I.R.C. § 501(c)(3) ("501(c)(3)").

The Gunkles' income tax debacle began in 2002 when Bruce attended a church leadership conference and heard Elizabeth Gardner, wife of Frederick "Ric" Gardner (together, "the Gardners") speak about a religion-related tax gimmick that they were marketing, at the core of which was a so-called "corporation sole" as an alternative to a customary non-profit entity exempt from taxes under 501(c)(3).[1]  Central to the Gardners' step-transaction tax scheme[2] was the proposition that persons like the Gunkles could assign their

---

[1] "A corporation sole consists of only one person at a time, but the corporation may pass from one person to the next without any interruption in its legal status." *Roman Catholic Bishop of Springfield, A Corp. Sole v. City of Springfield*, 724 F.3d 78, 84 n.1 (1st Cir. 2013).  *See also Tex. Mobile Home Ass'n v. Comm'r of Internal Revenue*, 324 F.2d 691, 694-96 (5th Cir. 1963) (quoting *Trinidad v. Sagrada Orden*, 263 U.S. 578, 581-582 (1923)).

[2] "The step transaction doctrine is a corollary of the general tax principle that the incidence of taxation depends upon the substance of a transaction rather than its form." *Sec. Indus. Ins. Co. v. United States*, 702 F.2d 1234, 1244 (5th Cir. 1983) (citing *Kuper v. Comm'r of Internal Revenue*, 533 F.2d 152, 155 (5th Cir. 1976)).  As we have explained previously:

> Under the step transaction doctrine, the tax consequences of an interrelated series of transactions are not to be determined by viewing each of them in isolation but by considering them together as component parts of an overall plan. When considered individually, each step in the series may well escape taxation. The individual tax significance of each step is irrelevant, however, if the steps when viewed as a whole amount to a single taxable transaction. Taxpayers cannot compel a court to characterize the transaction solely upon the basis of a

income to a corporation sole and deduct the amounts thus assigned as charitable donations without the need to qualify that entity under 501(c)(3), and would thereby "transform taxable individual income into non-taxable income." The Gardners marketed their packaged "how-to" program to those attending the conference, and Bruce was among the purchasers.[3]

As the first step in implementing the Gardeners' multi-step plan, Bruce dissolved his existing 501(c)(3) non-profit corporation, City of Refuge, Inc., through the Texas Secretary of State, thereby terminating its tax-exempt status in the process. As his next step, Bruce formed the "Office Of Presiding Pastor, Bruce W. Gunkle, And His Successors, A Corporation Sole" as a Nevada entity "within the ecclesia of the City of Refuge" (the "corporation sole"). As the tax court observed, "Gunkle concluded that he did not wish to continue operating as a nonprofit corporation . . . because of concern that such status might allow Governmental interference with the organization and that the

---

concentration on one facet of it when the totality of circumstances determines its tax status.

*Id.* (internal quotation marks, citations, and brackets omitted); *see also United States v. Shows*, 307 Fed. App'x 818, 821 (5th Cir. Jan. 21, 2009) (unpublished) (citing *Sec. Indus. Ins. Co.*, 702 F.2d at 1244).

[3] Although the Gunkles are proceeding *pro se* in this appeal, they were represented in the Tax Court by the same counsel who represented the Gardners in their own tax case implicating unreported income purportedly shielded by a corporation sole. The Gardners lost that case and have appealed to the Ninth Circuit for their tax year 2004, consolidated with another Tax Court case involving their tax years 2002 and 2003. In yet another federal case involving the Gardners, the district court for the District of Arizona enjoined them from promoting, marketing, and selling corporation soles, which promotions, the court stated, had "encourage[d] [their vendees'] willful misreading of the [tax] law" by promising unwarranted tax benefits. Per that district court's order, the Gardners were required to furnish a copy of the injunction to the Gunkles. *See United States v. Gardner*, 2008 WL 906696, at *6 (D. Ariz. Mar. 21, 2008), *aff'd*, 457 F. App'x 611 (9th Cir. 2011).

'business model' of a corporation allowed the directors a say in the operations."[4] The next step in the Gunkles' series was their signing of a "vow of poverty," which they had the corporation sole accept and agree to provide "all their needs as Apostles and as pastors of this church ministry. The check will be placed in the church pastoral account every two weeks according to all the needs of the pastors." As their last step down the Gardners' primrose path, the Gunkles deeded their residence to Bruce's corporation sole, all the while continuing to reside there.

During 2007, the tax year at issue, the Gunkles performed pastoral functions and conducted services. They also performed "sacerdotal functions" for their corporation sole. A checking account at Wells Fargo Bank was maintained in the name "The City of Refuge Christian Fellowship Pastoral Expense Account" (the "Pastoral Account"). The periodic statements for that account were mailed to the Gunkles at the residence that they had transferred to their corporation sole. Although others had signature authority on that bank account, no one except the Gunkles ever signed checks on it, and neither Gunkle had signature authority on any other checking account. Deposits into the Pastoral Account came from Bruce's military retirement payments and Social Security disbursements, as well as from City of Refuge member and non-member contributions.

The Gunkles used the funds from the Pastoral Account to pay their personal expenses, such as purchasing and maintaining automobiles, buying food and groceries, paying for household expenses, and the like. They also used that account to pay mortgage, utility, and maintenance charges on the

---

[4] *Gunkle*, 2012 WL5371425 at *1. The Commissioner and the Tax Court deemed significant the fact that Bruce was trying to unload the prior directors "oversight." Indeed, the Gunkles' vow of poverty might have been effective if they were actually to work for a separate entity, possibly even the prior City of Refuge.

corporation sole's property which they occupied rent-free as their residence.  In addition to the Pastoral Account, Sherilyn had a savings account at a federal credit union into which deposits were made from the Pastoral Account and on which interest was earned during 2007.  No one else made deposits into that savings account.

The Gunkles' 2007 joint federal income tax return was prepared by none other than Ric Gardner.  It reported income from Bruce's Social Security and military pension benefits that had been deposited into the Pastoral Account, but it reported no income from their corporation sole.  The Commissioner's Notice of Deficiency for that tax year asserted an income tax deficiency of $16,262 plus a 20% accuracy-related addition of $3,252.40.[5]

## B.     Tax Court Proceedings

The Gunkles filed suit in the Tax Court in 2011, challenging the Commissioner's assessments for deficiency and additions to tax on their 2007 joint income tax return.  The Gunkles asserted that the unincorporated City of Refuge was a "church" or "legitimate religious organization" exempt under 501(c)(3), and that it was a religious order as well.  Thus, argued the Gunkles, deposits to the Pastoral Account were non-taxable gifts, and their vows of poverty shielded their compensation for services as its agents.  They also claimed that their donations to their corporation sole entitled them to deductions for charitable contributions.

The Commissioner countered that the Gunkles' compensation for services rendered was taxable, even if, *arguendo*, their corporation sole were a "church" or other exempt organization.  The Commissioner also asserted that, for tax purposes, the payment of the Gunkles' living expenses from the Pastoral Account was compensation for services, in consequence of which deposits into

---

[5] These deficiencies were subsequently revised to $13,690 and $2,738, respectively.

No. 13-60245

the Pastoral Account were taxable to the Gunkles who had exclusive control of that account at all relevant times. The Commissioner noted further that the Gunkles had not validly assigned their income to Bruce's corporation sole pursuant to their vows of poverty. The Commissioner also took the position that the Gunkles owed taxes on deposits of cash and dividends into Sherilyn's federal credit union account, but not on transfers to it from the Pastoral Account. In sum, the Commissioner insisted that the Gunkles had unreported taxable income for 2007, were not entitled to charitable deductions, and were liable for the additional taxes that the IRS had assessed, as well as for the 20% accuracy-related assessment.

## C.    Tax Court Disposition

As it and the other courts that had dealt with the Gardners' own, essentially identical tax cases had done previously, the Tax Court rejected the Gunkles' positions that relied on the package they had purchased from the Gardners, had been instituted seriatim, and had been taken by the Gunkles on their tax returns. The court ruled that the Gunkles' depositing of funds into the Pastoral Account as donations and assigning their income to Bruce's corporation sole based on their vows of poverty lacked substance and were unavailing, as were their contentions that they were acting as agents of the corporation sole.

The Tax Court concluded that "petitioners exercised complete dominion and control over all of the funds in the pastoral account without any restriction by the City of Refuge or any other person."[6] The court noted that the Gunkles had "not shown that the City of Refuge CF has any characteristics of a religious order" and concluded they were not entitled to the rules "applicable to payment

---

[6] *Gunkle,* 2012 WL 5371425 at *3.

6

of expenses on behalf of members of a religious order."[7]  Similarly, the court ruled that deposits into Sherilyn's account at the federal credit union constituted income to the Gunkles.[8]

The Tax Court agreed with the Commissioner that the Gunkles had failed to present credible evidence to support treating their deductions as charitable contributions, principally because the corporation sole did not meet the requirements of I.R.C. §§ 170(c)(2) or 501(c)(3).  The court ultimately rendered judgment for the Commissioner on the basis of its November 1, 2012 opinion, holding that the Gunkles' reported income tax for 2007 was deficient in the amount of $13,690 and that they owed a penalty under I.R.C. § 662(a) of $2,738.  The Gunkles timely filed a notice of appeal to this court.[9]

## II.    ANALYSIS

### A.    Standard of Review

In addressing appeals of cases tried to judgment in the Tax Court, like those tried to judgment in other courts of first instance, we review issues of law *de novo*[10] and findings of fact for clear error.[11]  This is particularly so when

---

[7] *Id.* at *4.  The Tax Court commented that the City of Refuge had no resemblance to a religious order

[8] *Id.*

[9] The Gunkles limit their appeal to the Tax Court's holding that deposits into the Pastoral Account in the name of the City of Refuge constituted unreported taxable income to them; they do not challenge—and therefore waive any claim of error regarding—that court's assessment of the additional 20% denial of charitable deduction, and deposits into the savings account at the federal credit union.

[10] *Green v. Comm'r of Internal Revenue*, 507 F.3d 857, 866 (5th Cir. 2007).

[11] *Yoon v. Comm'r of Internal Revenue*, 135 F.3d 1007, 1012 (5th Cir. 1998).

No. 13-60245

we review a holding of the Tax Court that the Commissioner correctly determined the amount of a taxpayer's unreported income.[12]

## B.    Burden of Proof

Taxpayers who contest the Commissioner's determinations of deficiencies have the burden of proving that such determinations are erroneous.[13]  Although the Commissioner must adduce some evidence that a taxpayer has engaged in activity generating unreported income, the taxpayer still must prove that the Commissioner's determinations are erroneous.[14]

## C.    Merits

As both the Commissioner and the Gunkles have expressed a preference to dispense with oral argument, we decide this appeal on the basis of their briefs and record excerpts and the record on appeal, including the opinion and judgment of the Tax Court.

Income received by the agent of a principal is deemed to be the income of the principal and not the income of the agent.[15]  It follows that income received by a member of a religious order as the agent of the order, promptly delivered to the order based on the agent's vow of poverty, is deemed to be the income of the order and not of the agent.[16]  Conversely, however, a member of a religious order who earns or receives income therefrom in his individual capacity cannot avoid taxation on that income merely by taking a vow of

---

[12] *Id.  See also Webb v. Comm'r of Internal Revenue*, 394 F.2d 366, 372 (5th Cir. 1968).

[13] *Yoon*, 135 F.3d at 1012; *Felt v. Comm'r of Internal Revenue*, 433 F. App'x 293, 294 (5th Cir. 2011).

[14] *Carson v. United States*, 560 F.2d 693, 697 (5th Cir. 1977).

[15] *Md. Cas. Co. v. United States*, 251 U.S. 342, 345-48 (1920).

[16] *See* Rev. Rule. 77-290, 1977-2 C.B. 26, 1977 WL 43557.

8

poverty and assigning the income to that religious order or institution.[17]  The same rule applies to entities organized as "corporation soles."[18]  "[A]n individual has received income when he gains complete dominion and control over money or other property, thereby realizing an economic benefit."[19]

Moreover, the Commissioner may use indirect methods to reconstruct the income of a taxpayer who fails to maintain or produce records adequate to allow his correct tax liability to be determined.[20]  One common method of such reconstruction involves analyzing bank deposits.[21]  Such reconstruction assumes that, except for funds from nontaxable sources, money deposited into the taxpayer's bank account constitutes taxable income:  The taxpayer has the burden of proving otherwise.[22]  This rule covers deposits into bank accounts over which the taxpayer has dominion and control and is not limited to deposits made to the taxpayer's personal account.[23]  And, deposits into church accounts are covered by this rule without the need "to disregard the separate existence of the church or to challenge the tax status of the church as an entity."[24]

---

[17] *See, e.g.*, *Page v. Comm'r of Internal Revenue*, 823 F.2d 1263, 1271 (8th Cir. 1987); *Pollard v. Comm'r of Internal Revenue*, 786 F.2d 1063, 1065-66 (11th Cir. 1986).

[18] *Gardner v. Commissioner*, 2013 WL 892963, at *5-6 (T.C. Mar. 11, 2013).

[19] *United States v. Curtis*, 782 F.2d 593, 596 (6th Cir. 1986).

[20] *Woodall v. Comm'r of Internal Revenue*, 964 F.2d 361, 364 (5th Cir. 1992).

[21] *Cummings v. Comm'r of Internal Revenue*, 410 F.2d 675, 678-79 (5th Cir. 1969).

[22] *Price v. United States*, 335 F.2d 671, 677 (5th Cir. 1964).

[23] *See, e.g.*, *United States v. Goldberg*, 330 F.2d 30, 38 (3rd Cir. 1964).

[24] *See Gardner*, 2013 WL 892963, at *5 (applying the rule to deposits into a church account set up as a corporation sole) (quoting *Woods v. Commissioner*, 1989 WL 134222 (T.C. Nov. 9, 1989), a*ff'd without pub. op.*, 929 F.2d 702 (6th Cir. 1991)).

No. 13-60245

The Gunkles clearly had unrestricted dominion and control over the Pastoral Account. During the tax year at issue, the Gunkles were authorized to make withdrawals from that account, and the periodic statements on the account were mailed to them at their erstwhile home. Bruce had no other bank account and, at his direction, his Social Security payments and retirement pay were deposited directly into the Pastoral Account. Only the Gunkles wrote checks on the Pastoral Account, among which was a relatively large transfer to Sherilyn's account at the federal credit union. The fact that all checks on the Pastoral Account were written by one of the Gunkles also confirms their dominion and control over it. The same is proved by the use they made of the money from that account to pay for essentially all of their personal costs and expenses: groceries, utilities, maintenance and repair, car loans, and on and on. The Tax Court also concluded correctly that the Gunkles received compensation from the City of Refuge and did not, as they claim, receive the funds as its agents.[25]

The Gunkle's case is best summed up in the words of the Second Circuit when it observed almost 30 years ago:

> Every year, with renewed vigor, many citizens seek sanctuary in the free exercise clause of the first amendment. They desire salvation not from sin or temptation, however, but from the most earthly of mortal duties—income taxes.[26]

The judgment of the Tax Court is, in all respects,

AFFIRMED.

---

[25] *See, e.g., Gardner,* 2013 WL 892963, at *16-17; *Page,* 823 F.2d at 1271; *Pollard,* 786 F.2d at 1065-66.

[26] *Mone v. Comm'r of Internal Revenue,* 774 F.2d 570, 571 (2nd Cir. 1985).

10