T.C. Memo. 2012-305

UNITED STATES TAX COURT

BRUCE GUNKLE AND SHERILYN S. GUNKLE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5650-11.                          Filed November 1, 2012.

Scott W. Gross, for petitioners.

Brooke S. Laurie, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Judge: Respondent determined a deficiency of $16,262 in

petitioners' Federal income tax for 2007 and a penalty of $3,252.40 under section

6662(a). The issues for decision are whether petitioners' taxable income includes

deposits into two bank accounts, whether they are entitled to charitable

**[\*2]** contribution deductions, and whether they are liable for the penalty. All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Petitioners resided in Texas at the time they filed their petition. Bruce Gunkle earned a bachelor of science degree from the U.S. Naval Academy and a master's degree in theology from Antioch University. Sherilyn Gunkle attended one year of college at the University of South Carolina.

During 2007 petitioners served as pastors and conducted religious worship services and performed sacerdotal functions for the City of Refuge Christian Fellowship (City of Refuge CF).

The City of Refuge Christian Fellowship, Inc. (City of Refuge, Inc.), was formed as a domestic nonprofit corporation on January 11, 1990, by filing articles of incorporation with the secretary of state for Texas. In 1991 the Internal Revenue Service (IRS) granted City of Refuge, Inc., exempt status under section 501(c)(3).

In 2002 petitioner Bruce Gunkle attended a Church Leadership Conference. Elizabeth Gardner and Fredrick "Ric" Gardner were invitees to the conference, and Elizabeth Gardner was a speaker at the conference. Petitioners requested that

[*3] the Gardners help them establish Bruce W. Gunkle, a religious corporation sole and his successors for the governance of the City of Refuge CF.

Thereafter petitioner Bruce Gunkle concluded that he did not wish to continue operating as a nonprofit corporation or to continue the section 501(c)(3) status previously acknowledged by the IRS for City of Refuge, Inc., because of concern that such status might allow Government interference with the organization, that the "business model" of a corporation allowed the directors a say in the operations, and that continuity of the organization would be aided by a new format. On February 25, 2004, the Office of Presiding Pastor, Bruce W. Gunkle, And His Successors, A Corporation Sole, was formed in Nevada. On March 1, 2004, petitioners each signed a document entitled "Vow of Poverty". By a resolution dated April 1, 2004, the City of Refuge CF resolved in part that "The church accepts their confirmation and * * * City of Refuge Christian Fellowship will provide all their needs as Apostle and as pastors of this church ministry. A check will be placed in the church pastoral account every two weeks according to all the needs of the pastors." Petitioners executed a deed transferring their residence to the City of Refuge CF.

On April 22, 2004, the City of Refuge, Inc., was dissolved by articles of dissolution signed by Bruce Gunkle and filed with the secretary of state for Texas.

[*4] On June 16, 2004, the IRS notified the City of Refuge, Inc., and Bruce Gunkle that the organization's section 501(c)(3) status was terminated and that contributions to it were no longer tax deductible.

During 2007 a checking account was held at Wells Fargo Bank in the name of "The City of Refuge Christian Fellowship Pastoral Expense Account" (pastoral account). Petitioners each had signature authority for the pastoral account. Petitioners' daughter, Theresa R. Gunkle, and Sylvia Crutchfield, office administrator and children's pastor for the City of Refuge CF, also had signature authority on the pastoral account. However, neither petitioners' daughter nor the office administrator signed any checks to withdraw funds from the pastoral account during 2007. Bank statements for the pastoral account were mailed to petitioners' residence.

Deposits into the pastoral account during 2007 included payments by church members and nonmembers as well as Social Security payments to Bruce Gunkle electronically deposited pursuant to directions of Bruce Gunkle.

During 2007 all checks written to make withdrawals from the pastoral account were written by one of petitioners. Petitioners used the funds in the pastoral account to purchase groceries for their personal consumption, to make payments on a 2006 Ford Explorer and a 2006 Lincoln LT truck that they owned

[*5] personally, to pay other vehicle expenses, and to pay their household and living expenses and other personal expenses. Payments for the mortgage, as well as payments for utilities and repairs and maintenance on petitioners' residence, were made from the pastoral account.

Sherilyn Gunkle had signature authority on an account at Randolph Brooks Federal Credit Union (RBFCU account) during 2007. The RBFCU account was in the names of Sherilyn Gunkle, Theresa Gunkle, and Lisa Sue Blasco. Bank statements for the RBFCU account were sent to petitioners' residence. Deposits into the RBFCU account during 2007 consisted of $7,800 transferred from the pastoral account, cash, and dividends earned on the account. All cash deposits into the account were made by petitioners.

On their jointly filed 2007 Form 1040, U.S. Individual Income Tax Return, petitioners reported $36,993, the amount of Bruce Gunkle's military pension, as wages. They also reported $14,466 of Social Security benefits received and that $4,637 was the taxable amount of those benefits. They did not report any income from the City of Refuge CF. They claimed a deduction of $13,917 for charitable contributions, of which $8,926 was claimed for contributions to the City of Refuge CF. The tax return was prepared and signed by Frederick Gardner.

[*6]   On March 21, 2008, an injunction was entered in the U.S. District Court for the District of Arizona in civil action No. CV05-3073-PCT-EHC enjoining Frederick Gardner and Elizabeth Gardner from activities including promotion of corporations sole because, among other things, the District Court found that they had participated in an abusive tax program promising unwarranted tax benefits from a corporation sole.  Bruce Gunkle received a copy of the injunction in June 2008 and read it.

The notice of deficiency was based on analysis of bank accounts over which petitioners maintained control, to wit, the pastoral account and the RBFCU account. By this method, respondent determined that petitioners had unreported income of $72,727.79, but respondent has made concessions reducing the unreported income amount to $62,456.64.  Respondent also disallowed all of petitioners' claimed charitable contribution deductions and adjusted the taxable amount of Social Security benefits to reflect the increased income determined in the notice.

OPINION

Unreported Income

Petitioners contend that deposits into the pastoral account were nontaxable gifts by various donors to the City of Refuge CF and that their vows of poverty

**[\*7]** insulate them from taxation on the compensation they received for their services to that church.

In very similar circumstances we have held that deposits made into the account of a purported church were includable in the taxpayers' gross income where the taxpayers were the owners of the bank accounts, exercised complete control over the funds in the accounts, and used those funds for personal expenditures. See Woods v. Commissioner, T.C. Memo. 1989-611, aff'd without published opinion, 929 F.2d 702 (6th Cir. 1991); see also Chambers v. Commissioner, T.C. Memo. 2011-114. In Woods we stated:

> It is not necessary to disregard the separate existence of the church or to challenge the tax status of the church as an entity in order to sustain respondent's determinations in this case. Whether they were entitled to the funds or embezzled the funds from the church, petitioners exercised complete dominion and control over deposits into the various bank accounts that were the basis of respondent's determination. * * *

Taxpayers may not self-declare an exemption from income tax by the simple expediency of taking a vow of poverty. See McGahen v. Commissioner, 76 T.C. 468, 478-479 (1981), aff'd without published opinion, 720 F.2d 664 (3d Cir. 1983). Payments or benefits received in exchange for services rendered by individuals and not on behalf of a separate and distinct principal are taxable to the individuals. See Pollard v. Commissioner, 786 F.2d 1063, 1065-1066 (11th Cir.

[*8] 1986), aff'g T.C. Memo. 1984-536; Stephenson v. Commissioner, 79 T.C. 995, 999-1002 (1982), aff'd, 748 F.2d 331 (6th Cir. 1984); McGahen v. Commissioner, 76 T.C. at 478-479; Yoshihara v. Commissioner, T.C. Memo. 1999-375. Petitioners in their reply brief deny that there is an entity named "The City of Refuge" and simultaneously assert that Bruce Gunkle formed the City of Refuge CF. Their claims that the payments deposited into the pastoral account were for a church for which petitioners were merely agents is unsupported, inexplicable, and unpersuasive.

Here payment of their personal living expenses from funds of the City of Refuge CF was, by the agreement reflected in the resolution accepting petitioners' vows of poverty, in exchange for services petitioners performed as pastors. Thus the payment of their personal expenses was compensation they received. In addition, petitioners exercised complete dominion and control over all of the funds in the pastoral account without any restriction by the City of Refuge CF or any other person. One of Bruce Gunkle's stated reasons for dissolving the corporation known as City of Refuge, Inc., was his belief that such an entity allowed the directors of the corporation to control management of the entity. City of Refuge CF was controlled only by petitioners. They did not receive payments as agents of

**[*9]** City of Refuge CF. To the contrary, payments made to the City of Refuge CF pastoral account were solely for their benefit.

Although petitioners claim to be members of a religious order, they have not shown that the City of Refuge CF has any characteristics of a religious order. See, e.g., Kircher v. United States, 872 F.2d 1014, 1018-1019 (Fed. Cir. 1989); Found. of Human Understanding v. Commissioner, 88 T.C. 1341 (1987); St. Joseph Farms of Indiana Bros. of the Congregation of Holy Cross, Southwest Province, Inc. v. Commissioner, 85 T.C. 9 (1985); Rev. Proc. 91-20, 1991-1 C.B. 524. Thus they are not entitled to rules applicable to payment of expenses on behalf of members of a religious order.

Petitioners identify the RBFCU account as a savings account which they also used as their own and have not shown that any other person had an interest in or control over the account. Respondent has conceded that transfers from the pastoral account into the RBFCU account are not taxable, but petitioners have not shown that the cash deposits into the RBFCU account or the interest earned on the account are not their income. See Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964); Chambers v. Commissioner, T.C. Memo. 2011-114; Yoshihara v. Commissioner, T.C. Memo. 1999-375.

**[*10]**  We conclude that respondent's determination of petitioners' unreported income, as reduced by the concessions in respondent's brief, properly included amounts deposited into the pastoral account and the RBFCU account.

Charitable Contribution Deductions

Respondent asserts that the amounts claimed for contributions to the City of Refuge CF were not deductible because petitioners did not give up control over those amounts, which ultimately were used for their benefit.  See sec. 170(c)(2)(C). Moreover, argues respondent, there is no evidence that City of Refuge CF qualified under section 501(c)(3) to receive deductible contributions once the exempt status of City of Refuge, Inc., was terminated.

Respondent also disallowed deductions for alleged contributions to John P. Kelly Ministries, Inc. (DBA L.E.A.D.), and International Christian Wealthbuilders Foundation and argues that there is no evidence in the record establishing the eligibility of these organizations to receive tax-deductible contributions under section 170(c)(2).

Finally, respondent argues that there is no evidence that petitioners actually made the claimed charitable contributions because the bank records reviewed by respondent do not show the source of the claimed charitable contributions.  To the extent the Court finds that the income deposited into the pastoral account is the

**[*11]** taxable income of petitioners, respondent concedes that any amounts paid from the pastoral account should be treated as amounts paid by petitioners.

Petitioners have the burden of proving their entitlement to deductions claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). Petitioners have presented only purported receipts for the contributions and no evidence regarding the charitable or church status of the entities issuing the receipts. See, e.g., Stephenson v. Commissioner, 79 T.C. at 1002 ("To get a charitable deduction, petitioner[s] must prove that the recipient organization qualified under section 170(c)(2). For a church to so qualify, it must meet the section 501(c)(3) organizational and operational tests".). They have not addressed in their briefs respondent's contentions concerning entities other than City of Refuge CF and have made only generalized and unsupported assertions concerning the status of City of Refuge CF. Under the circumstances of this case, petitioners have not satisfied the burden of proof and have not presented credible evidence under section 7491 to shift the burden to respondent.

Section 6662 Penalty

Section 6662(a) and (b)(1) and (2) imposes a 20% accuracy-related penalty on any underpayment of Federal income tax attributable to a taxpayer's negligence or disregard of rules or regulations or substantial understatement of income tax.

**[\*12]** Section 6662(c) defines negligence as including any failure to make a reasonable attempt to comply with the provisions of the Code and defines disregard as any careless, reckless, or intentional disregard. Disregard of rules or regulations is careless if the taxpayer does not exercise reasonable diligence to determine the correctness of a tax return position that is contrary to the rule or regulation. Sec. 1.6662-3(b)(2), Income Tax Regs. An understatement of income tax is substantial if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

Under section 7491(c), respondent has the burden of producing evidence that the section 6662 penalty is appropriate. See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Respondent has met this burden by evidence of unreported income and improper deductions that resulted in a substantial understatement of income tax.

Petitioners have not addressed the reasonable cause or good-faith defenses to the section 6662 penalty. See sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 448-449. They do not claim to have relied on anyone with respect to the omissions of income or claimed deductions. For obvious reasons in view of his history, petitioners do not claim to have relied on Frederick Gardner, the preparer of their tax return. They simply claim that they did not have unreported income

**[\*13]** and that they substantiated their deductions, claims that we have rejected for the reasons stated above.

We have considered the other arguments of the parties in their poorly organized and less than satisfactory briefs. They are lacking in merit or irrelevant to our conclusions.

To reflect respondent's concessions,

<u>Decision will be entered</u>

<u>under Rule 155</u>.