T.C. Memo. 2014-181

UNITED STATES TAX COURT

HAROLD CORTES AND JULIE CORTES, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 26444-11, 11252-12.　　　　Filed September 3, 2014.

Scott W. Gross, for petitioners.

Vladislav M. Rozenzhak and Miles D. Friedman, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

BUCH, Judge: Respondent issued notices of deficiency determining the

following deficiencies and penalties with respect to Mr. and Mrs. Cortes' Federal

income tax for years 2007, 2008, and 2009:[1]

---

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

| [*2] Year | Deficiency | Penalty sec. 6662(a) |
|------|------------|----------------------|
| 2007 | $32,218 | $6,444 |
| 2008 | 17,370 | 3,474 |
| 2009 | 22,511 | 4,502 |

After concessions by both parties, the issues remaining for consideration are whether Mr. Cortes had unreported income and whether the Corteses are liable for an accuracy-related penalty for each year. The Corteses argue that the money Mr. Cortes received from Seventh Day Sabbath Church in return for his services as a pastor should not be included in income because he took a vow of poverty that insulated him from having to report the income. We conclude that the compensation for his services was income and that the Corteses are liable for the accuracy-related penalty for each year in issue.

FINDINGS OF FACT

In 1997 Mr. Cortes helped found the Christian Fellowship of Seventh Day Adventists, a church fellowship. Also in 1997 Mr. Cortes was appointed as a pastor and elder of the church fellowship, and Mrs. Cortes was appointed

---

[1](...continued)
Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[*3] secretary.[2]  At some point, the church fellowship became known as Seventh

Day Sabbath Church, an unincorporated association.

In 2001 Mr. Cortes met Frederic and Elizabeth Gardner through another

pastor.  The church council invited the Gardners to give a presentation on church

organization and setting up ministries and vows of poverty.  Mr. Cortes later

contacted the Gardners about setting up a ministry, setting up a corporation sole,

and taking a vow of poverty.[3]  Mr. Cortes was a customer of the Gardners and

made contributions to Bethel Aram Ministries, an entity formed by the Gardners.[4]

In January 2001 Mr. Cortes incorporated a corporation in Nevada named "The

Office of Presiding Head Elder, Salomon Haroldo Cortes, After the Order of Jesus

---

[2]Mrs. Cortes served as Secretary for only one year.

[3]The Gardners' corporation sole and vow of poverty arrangement has been
the subject of litigation both here and elsewhere.  See Gardner v. Commissioner,
T.C. Memo. 2013-67 (payments made to a corporation sole included in income
notwithstanding vow of poverty); United States v. Gardner, No. CV05-3073-PCT-
EHC, 2008 WL 906696, at *6 (D. Ariz. Mar. 21, 2008), aff'd, 457 Fed. Appx. 611
(9th Cir. 2011) (enjoining the Gardners from promoting, organizing, and selling
their corporation sole tax arrangement); see also Gunkle v. Commissioner, T.C.
Memo. 2012-305, aff'd, 753 F.3d 502 (5th Cir. 2014) (holding that payments to a
corporation sole established with the help of the Gardners are taxable
notwithstanding a vow of poverty).

[4]Three of Mr. Cortes' witnesses also made contributions to Bethel Aram
Ministries, and each set up a ministry or corporation and took a vow of poverty
consistent with the Gardners' instructions.

[*4] Christ, The High Priest and King, and His Successors, A Corporation Sole." At some point in 2001 Mr. Cortes became an ordained minister. Mr. Cortes signed a vow of poverty in December 2001.[5] After Mr. Cortes signed the vow of poverty the Corteses purchased a home in Mrs. Cortes' name. The Corteses own three vehicles: they jointly own a truck and a Mercedes, and Mr. Cortes owns a Volkswagen.

Mr. Cortes is the owner of an entity called Living Waters Ministries. During the years in issue Living Waters Ministries held three bank accounts at Wells Fargo Bank, in the name of "Living Waters Ministries A Corporation Sole".[6] Mr. and Mrs. Cortes were the only signatories on the Living Waters Ministries accounts.

During the years in issue Mr. Cortes was a pastor with the Seventh Day Sabbath Church. In return for his services Seventh Day Sabbath Church issued checks every two weeks for $1,791.42 to Living Waters Ministries.[7] The church also issued checks of varying amounts made out to cash that Mr. Cortes endorsed

---

[5]Two versions of the vow of poverty appear in the record with different terms.

[6]On June 17, 2010, Mr. Cortes submitted a form to Wells Fargo Bank to delete the words "A Corporation Sole" from the bank statements.

[7]Beginning in September 2009 that amount was increased to $1,863.08.

[*5] and deposited into the Living Waters Ministries accounts.  Mr. Cortes was a signatory on the Seventh Day Sabbath Church bank account, but in order to draw on that account each check required two signatures.

Once the money from Seventh Day Sabbath Church was deposited into the Living Waters Ministries accounts, the church had no control over how that money was spent, and Mr. Cortes did not have to make an accounting to the church of how the money was spent.  Out of the Living Waters Ministries bank accounts, Mr. Cortes paid the mortgage and utilities for the home in Mrs. Cortes' name, as well as other personal expenses such as for food and transportation.

The Corteses filed joint Federal income tax returns for 2007 through 2009, each reporting Mrs. Cortes' earnings as wages and reporting Mr. Cortes as unemployed.  Although the Corteses paid a return preparer to prepare their returns, they did not did not discuss with the preparer Mr. Cortes' activities as a pastor or the money deposited into the Living Waters Ministries accounts that he used to support his wife and two children.

Respondent issued notices of deficiency for 2007 through 2009, determining that the deposits into the Living Waters Ministries accounts were unreported income to Mr. Cortes and that the Corteses are liable for an accuracy-

[*6] related penalty for each year.  The Corteses, while residing in California, timely filed petitions disputing the notices of deficiency, and the cases were consolidated.

Respondent allowed Mr. Cortes a deduction for a parsonage allowance of $24,000 per year.  The parties have agreed by stipulation that some of the deposits were reimbursements or were otherwise not taxable.  The parties have also agreed that the Corteses failed to report State tax refunds for 2008 and 2009.  We address the issues of unreported income and the accuracy-related penalty.

## OPINION

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that the determinations are in error.[8]  In the Court of Appeals for the Ninth Circuit, to which an appeal of these cases would lie,[9] the presumption of correctness does not attach in cases involving unreported income unless the Commissioner first establishes an evidentiary foundation linking the taxpayer to the alleged income-

---

[8]Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

[9]See sec. 7482(b)(1)(A), (2).

**[\*7]** producing activity.[10]  The requisite evidentiary foundation is minimal and need not include direct evidence.[11]

Once the Commissioner produces evidence linking the taxpayer to an income-producing activity, the burden shifts to the taxpayer "to rebut the presumption of correctness of respondent's deficiency determination by establishing by a preponderance of the evidence that the deficiency determination is arbitrary or erroneous."[12]  Respondent has established the requisite minimal evidentiary foundation by linking Mr. Cortes and his activities as a pastor to the payments the church made to Living Waters Ministries.  Therefore, the Corteses have the burden of proof.  The Corteses have neither claimed nor established that they satisfy the requirements of section 7491(a) to shift the burden of proof to respondent.

---

[10]See Weimerskirch v. Commissioner, 596 F.2d 358, 361-362 (9th Cir. 1979), rev'g 67 T.C. 672 (1977).

[11]See Banister v. Commissioner, T.C. Memo. 2008-201, aff'd, 418 Fed. Appx. 637 (9th Cir. 2011).

[12]Petzoldt v. Commissioner, 92 T.C. 661, 689 (1989); see also Hardy v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), aff'g T.C. Memo. 1997-97.

**[*8]** <u>Vow of Poverty</u>

The Corteses acknowledge that the Seventh Day Sabbath Church paid money to Living Waters Ministries on behalf of Mr. Cortes for his personal and housing expenses. The Corteses also acknowledge that the amounts were received by them personally from Seventh Day Sabbath Church. Mr. Cortes asserts, however, that because he received the money after he signed a vow of poverty, it is not taxable.

Section 61(a)(1) defines gross income as "all income from whatever source derived", including compensation for services. This definition is construed broadly and extends to all accessions to wealth over which the taxpayer has complete control.[13] As the Supreme Court explained, a gain "constitutes taxable income when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it."[14] A taxpayer has dominion and control when the taxpayer is free to use the funds at will.[15] The use of funds for personal purposes indicates dominion and control, even over an account titled in the name of a church or other religious organization.[16]

---

[13]See <u>Commissioner v. Glenshaw Glass Co.</u>, 348 U.S. 426, 431 (1955).

[14]<u>Rutkin v. United States</u>, 343 U.S. 130, 137 (1952).

[15]<u>Rutkin v. United States</u>, 343 U.S. at 137.

[16]<u>Gardner v. Commissioner</u>, T.C. Memo. 2013-67, at *13 (citing <u>Woods v.</u>

(continued...)

[*9]  Mr. Cortes alleges that the vow of poverty he took insulated him from being taxed on the compensation he received from Seventh Day Sabbath Church.  Mr. Cortes points us to three cases to support his assertion that the income he received is actually tax-exempt income of the church itself:  Shuster v. Commissioner, Fogarty v. United States, and McEneany v. Commissioner.[17]

Those cases do not advance Mr. Cortes' position.  First, the cases are factually distinguishable.  In the cited cases the taxpayer was paid a salary by a third party and then remitted the salary to the religious order in accordance with a vow of poverty.  In contrast, Mr. Cortes received compensation for providing services to the church, and he made no attempt to assign his income back to Seventh Day Sabbath Church in accordance with the vow of poverty.  In addition to being factually distinguishable, the outcomes in those cases do not favor Mr. Cortes.  In each case, the taxpayer was held to have earned the income individually, and thus the taxpayers were required to include their compensation in their taxable income.

---

[16](...continued)
Commissioner, T.C. Memo. 1989-611, and Chambers v. Commissioner, T.C. Memo. 2011-114).

[17]See Shuster v. Commissioner, 800 F.2d 672, 677 (7th Cir. 1986), aff'g 84 T.C. 764 (1985); Fogarty v. United States, 780 F.2d 1005, 1012 (Fed. Cir. 1986); McEneany v. Commissioner, T.C. Memo. 1986-413.

**[*10]** A distinction here is that the payments were not made directly to Mr. Cortes, but instead to Living Waters Ministries. But Mr. Cortes individually provided his services as a pastor to Seventh Day Sabbath Church, and he received compensation for those services in the form of payments the church made to Living Waters Ministries. The Living Waters Ministries accounts were controlled by Mr. and Mrs. Cortes, and that money was used for Mr. Cortes and his family's personal expenses. Mr. Cortes has been unable to provide any statute or caselaw that would support exclusion of those amounts from income; therefore, the money received for his services to Seventh Day Sabbath Church is Mr. Cortes' unreported income.

Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes a 20% penalty on "any portion of an underpayment of tax required to be shown on a return" if the underpayment is due to, among other reasons, negligence, disregard of rules or regulations, or any substantial understatement of income tax. The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Code; the term "disregard" includes any careless, reckless, or intentional disregard.[18] An understatement of income tax is "substantial" if the understatement exceeds the

---

[18]Sec. 6662(c).

**[\*11]** greater of 10% of the tax required to be shown on the return or $5,000.[19]

Respondent bears the burden of production as to the penalty.[20]  The understatement

for each year in issue exceeds 10% of the tax required to be shown on the return,

which is greater than $5,000.  Consequently, respondent satisfied his burden of

production.

The penalty will not apply to any portion of an underpayment for which a

taxpayer establishes that he or she had reasonable cause and acted in good faith.[21]

The Court must consider all facts and circumstances in determining whether the

taxpayer acted with reasonable cause and in good faith.[22]  In order to establish

good-faith reliance on an adviser, the taxpayer must prove that (i) he gave the

return preparer complete and accurate information, (ii) an incorrect return was the

preparer's fault, and (iii) he believed in good faith that he was relying on a

competent return preparer's advice as to the tax treatment.[23]  Although the Corteses

---

[19]Sec. 6662(d)(1)(A).

[20]Sec. 7491(c).

[21]Sec. 6664(c)(1).

[22]Sec. 1.6664-4(b)(1), Income Tax Regs.

[23]Estate of Goldman v. Commissioner, 112 T.C. 317, 324 (1999) (citing Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987)), aff'd without published opinion sub nom. Schutter v. Commissioner, 242 F.3d 390 (10th Cir.

(continued...)

**[*12]** had a paid return preparer, Mrs. Cortes admitted that they did not discuss with the preparer Mr. Cortes' activities as a pastor or the money deposited into the Living Waters Ministries accounts that he used to support his wife and two children.  Therefore, the Corteses have not shown reasonable reliance on their return preparer or any other evidence supporting a reasonable cause and good faith, and they are liable for the accuracy-related penalty for each year.

To reflect the foregoing and the concessions by the parties,

Decisions will be entered under

Rule 155.

---

[23](...continued)
2000).