145 T.C. No. 6

UNITED STATES TAX COURT

FREDRIC A. GARDNER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

ELIZABETH A. GARDNER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 14877-13L, 2940-14L.[1]        Filed August 26, 2015.


Ps, husband and wife, marketed and promoted a plan involving the use of entities known as corporations sole. The Internal Revenue Service (IRS) determined this plan to be an abusive tax shelter. Agreeing with the IRS, the U.S. District Court for the District of Arizona (District Court) found that Ps (1) sold more than 300 of these plans and (2) engaged in conduct that violated the provisions of I.R.C. sec. 6700 in that they made false/fraudulent statements as to the availability of tax benefits that could be derived therefrom. The District Court enjoined Ps from further promoting this plan and ordered Ps to provide the IRS with a list identifying all purchasers thereof. Subsequently, the IRS assessed a $47,000 penalty pursuant

_____

[1]These cases were consolidated for trial, briefing, and opinion by order of the Court dated February 3, 2015.

to I.R.C. sec. 6700 against each P for 2003 although the activities which the IRS determined to be in violation of I.R.C. sec. 6700 occurred in 2002, 2003, and 2004.

After Ps failed to pay the assessed penalties, the IRS commenced collection actions (lien and proposed levy actions). Ps challenged the appropriateness of these collection actions before different IRS settlement officers. Each settlement officer refused to discuss the existence/amount of the underlying I.R.C. sec. 6700 penalty.

Each IRS settlement officer sustained the lien and proposed levy action. Thereafter, Ps each sought judicial review of the settlement officer's determination pursuant to I.R.C. sec. 6330(d)(1).

Held: Pursuant to R's concession, Ps may contest in this Court the existence/amount of the underlying I.R.C. sec. 6700 penalties.

Held, further, on the basis of the findings of the District Court, Ps are collaterally estopped from disputing that they engaged in activities in violation of the provisions of I.R.C. sec. 6700. R established at trial that Ps sold the corporation sole plan to no fewer than 47 individuals. Thus, R established that Ps were liable for the underlying I.R.C. sec. 6700 penalties.

Held, further, the I.R.C. sec. 6700 penalty is imposed on the promoter of the plan/arrangement and is based on the promoter's actions, not the purchaser's actions. The I.R.C. sec. 6700 penalty is applicable even if the purchaser does not rely on the plan/arrangement or does not underreport his/her Federal income tax.

Held, further, I.R.C. sec. 6700 penalties are not assessed for discrete taxable years but rather for conduct and transactions that may occur over one or more taxable years. R's designation of 2003 as the tax period of imposition was for cogent administrative reasons and did not prejudice Ps. Ps were afforded in this Court a meaningful and

full opportunity to contest the amounts of the assessed I.R.C. sec. 6700 penalties.

Held, further, the IRS settlement officers did not abuse their discretion in sustaining the IRS lien and proposed levy actions.

Fredric A. Gardner and Elizabeth A. Gardner, pro sese.

Doreen Marie Susi, Derek S. Pratt, J. Rob Gordon, and Rachael J. Zepeda, for respondent.

JACOBS, Judge: Fredric A. Gardner and Elizabeth A. Gardner (petitioners or Gardners) are husband and wife. They marketed and promoted a plan or arrangement involving the use of trusts, limited liability companies (LLCs), and entities known as corporations sole which the Internal Revenue Service (IRS) determined to be an abusive tax shelter. Agreeing with the IRS, the U.S. District Court for the District of Arizona (District Court) determined that the Gardners had engaged in conduct in violation of section 6700 by making statements as to the availability of tax benefits that they knew or had reason to know were false or fraudulent and enjoined them from promoting their plan in the future. United States v. Gardner, No. CV05-3073-PCT-EHC, 2008 WL 906696 (D. Ariz. Mar. 21, 2008), aff'd, 457 Fed. Appx. 611 (9th Cir. 2011).

The District Court, among other matters, ordered the Gardners to provide the IRS with a list identifying all persons who had purchased their corporation sole plan. After receiving the list, the IRS assessed a $47,000 penalty pursuant to section 6700 against each petitioner. After the Gardners failed to pay the assessed penalties, the IRS commenced collection actions, specifically, filing a notice of lien and proposing levies against the Gardners' property. The Gardners challenged the appropriateness of these actions separately before different IRS settlement officers. Each settlement officer sustained the IRS' collection action. Thereafter, the Gardners timely sought review of those determinations in this Court pursuant to section 6330(d)(1).

The issues for decision are: (1) whether each petitioner is liable for the assessed $47,000 section 6700 penalty and (2) whether the IRS settlement officers abused their discretion in sustaining the IRS' lien against Mr. Gardner and in determining that the IRS' proposed levy actions against both Gardners could proceed.

All section references are to the Internal Revenue Code of 1986 (Code), as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts are stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference.[2] At the time they filed their petitions, petitioners resided in Arizona.

I.    Petitioners

Mr. Gardner attended Kent State University from 1966 to 1971 where he studied business and accounting and took at least one tax course. Both during and after college Mr. Gardner worked in finance. In 1997 Mr. Gardner became a certified estate planner and a financial planner. He holds himself out as an accountant with special training in business and charitable planning. Mrs. Gardner attended the Paralegal Institute of Arizona; she refers to herself as a certified paralegal.

From 1976 through 1978 both petitioners attended Christ for the Nations Bible College in Dallas, Texas, where each received an associate's degree in theology. After graduation they moved to Arizona where they became ministers and operated a Christian bookstore. After several years in operation the bookstore

---

[2]We also have relied on certain facts set forth in (1) District Judge Earl H. Carroll's order in United States v. Gardner, No. CV05-3073-PCT-EHC, 2008 WL 906696 (D. Ariz. Mar. 21, 2008), and (2) Gardner v. Commissioner, T.C. Memo. 2013-67, appeal filed (9th Cir. Aug. 1, 2013).

encountered financial and tax difficulties which ultimately resulted in the IRS'

assessing tax liabilities against each petitioner individually. The Gardners closed

the bookstore in 1992. That year was also the last year the Gardners filed a

Federal income tax return.

II.      Bethel Aram Ministries and Corporation Sole Plan

In 1993 the Gardners formed Bethel Aram Ministries (BAM), an

unincorporated association, organized to be an "ecclesiastical church ministry".

They did not file a Form 1023, Application for Recognition of Exemption Under

Section 501(c)(3) of the Internal Revenue Code. In 1999 petitioners each signed a

document entitled "vow of poverty" declaring his/her intent to "divest

[himself/herself] from earnings or wages from Bethel Aram Ministries". The

vows of poverty stated that BAM would provide for each's needs as a pastor of the

church ministry. They then transferred all of their assets, including title to their

home, to BAM. On September 27, 2001, Mrs. Gardner filed articles of

incorporation with the State of Nevada for "THE OFFICE OF PRESIDING HEAD

PROPHETESS of Elizabeth A. Gardner after The Order of the Lord Jesus Christ,

the High Priest and King after the Order of Melchizedek, and her Successors, a

corporation sole" of BAM.

Historically, a "corporation sole" is a succession of persons holding an ecclesiastical or monarchical office.  See Black's Law Dictionary 342 (7th ed. 1999); Bryan A. Garner, A Dictionary of Modern Legal Usage 225 (2d ed. 1995). Corporations sole are authorized under the laws of some States to enable religious leaders to hold property and conduct business for the benefit of the religious entity, as opposed to the benefit of the officeholder himself.  See Rev. Rul. 2004-41, 2004-1 C.B. 845.  The purpose of a corporation sole is to ensure continuity of ownership of property dedicated to the benefit of a religious organization.  Title to property that vests in the officeholder as a corporation sole passes to the successors of the office by operation of law instead of passing to the officeholder's heirs.  Id.; see also Chambers v. Commissioner, T.C. Memo. 2011-114.

Mrs. Gardner learned about corporations sole by speaking with Catholic bishops and canon law lawyers as well as through her own study.  The Gardners claimed that the use of their corporation sole plan could reduce an individual's Federal income tax liability.  The Gardners told their customers that they could assign their personal income to a corporation sole, thus transforming income otherwise taxable into nontaxable income of the corporation sole.  The Gardners advised customers who earned income through an independent business to operate their ministries through a corporation sole and to form an LLC to operate the

business. The customers were further advised (1) to create a trust for the ministry which would serve as the "majority member" of the LLC and (2) to hold individually a minority interest in the LLC and individually serve as the LLC's "managing member". The Gardners claimed that the income assigned to the trust would be tax free and that if the customer donated 50% of the income of the LLC allocated to him to his church, the donation would give rise to a charitable deduction. The Gardners asserted that the corporation sole plan generated the following benefits: (1) the corporation sole would not have to file a tax return; (2) the corporation sole was not subject to the scrutiny of any government agency, including the IRS; (3) the corporation sole had complete immunity from disclosure to the government; (4) the corporation sole was subject only to the "private government" of the person who created it; (5) there would be no withholding or self-employment taxes; (6) persons working for the corporation sole ceased to be classified as employees but rather would be classified as ministers of the corporation sole; and (7) the corporation sole could operate as any individual could.

The Gardners promoted their corporation sole plan by holding seminars where they claimed "that God has provided a way for you to be unencumbered in his church today and not at odds with the government, whatsoever!", and "Still not

sure this is for real? See what the prominent 'Blacks Law Library' has to say about 'Corporation Sole'!" They also created a Web site that promoted their corporation sole plan and held an annual retreat for individuals who participated in the corporation sole plan. Moreover, Mrs. Gardner distributed at least 500 copies of a book she wrote entitled "Corporation Sole vs. 501(c)(3) Corporation" to interested individuals.

In exchange for providing their corporation sole plan and assistance in establishing corporations sole, the Gardners asked for "donations" to BAM. The Gardners provided a "Donation Sheet" to interested individuals. Printed on BAM letterhead, the Donation Sheet provided a list of BAM's services and the amounts to be donated, including discounts if multiple services were requested:

### Donation Sheet

### Corporation Sole

PLEASE MAKE SEPARATE CHECKS OUT TO:

| Name | Amount | For |
|---|---|---|
| 1) BETHEL ARAM MINISTRIES | $1200.00 | CORPORATION SOLE |
| 2) CAROL SPACKMAN | $80.00 | RESIDENT AGENT FEE |
| 3) STATE OF NEVADA | $85.00 | FILING FEES<br>GOOD STANDING CERTIFICATE<br>CERTIFIED COPY OF ARTICLES |
| 4) STATE OF NEVADA | $200.00 | FOR EXPEDITING DOCUMENTS<br>[If you are Expediting your Documents] |
| 5) Bethel Aram Ministries | Total Amount<br>[One check for all]<br>Visa/MC is available | CORP SOLE, RESIDENT AGENT,<br>FILING, and EXPEDITING FEES |

## LLC

PLEASE MAKE SEPARATE CHECKS OUT TO:

| | | |
|---|---|---|
| 1) BETHEL ARAM MINISTRIES | $700.00 | LLC |
| 2) CAROL SPACKMAN | $80.00 | RESIDENT AGENT FEE |
| 3) STATE OF NEVADA | $85.00 | FILING FEES<br>GOOD STANDING CERTIFICATE<br>CERTIFIED COPY OF ARTICLES |
| 4) STATE OF NEVADA | $200.00 | FOR EXPEDITING DOCUMENTS |

[If you are Expediting your Documents]

## TRUST

PLEASE MAKE SEPARATE CHECKS OUT TO:

| | | |
|---|---|---|
| 1) BETHEL ARAM MINISTRIES | $1000.00 | TRUST |

Blessing Reduction...(2)Documents 10% (3) Documents 20%

The Gardners' promotion of their plan eventually drew the attention of the IRS. In 2004 the matter was referred to IRS Senior Program Analyst Kurt Kuxhausen, who focused on abusive transactions. Mr. Kuxhausen initiated his investigation by mailing the Gardners an appointment letter and an information document request (IDR).[3] In the IDR the IRS requested anything related to the Gardners' corporation sole plan, including books, videos, recordings, bank statements, canceled checks, and other information related to income received from the sale of the corporation sole plan. Having received no information from the Gardners, Mr. Kuxhausen went to the Gardners' home where he personally

---

[3]The IRS initially sent these documents to the wrong address. A second appointment letter and a second IDR were sent to petitioners' correct address.

served them with summonses to appear at a local IRS office to discuss the corporation sole plan and provide the IRS with the previously requested documents. While Mr. Kuxhausen was serving the summonses, the Gardners gave him a tour of their home, which also served as BAM's church and office. Mrs. Gardner gave Mr. Kuxhausen a copy of her book and a booklet entitled "Her Touch".

The Gardners ignored the IRS summonses. The IRS then issued a summons to BAM's bank, requesting BAM's account information. The Gardners attempted to quash the bank summons; their petition to do so was dismissed. Following the dismissal of the Gardners' petition to quash the bank summons, the IRS received BAM's bank records for 2002 and 2003 and for nine months of 2004. Relying on these records, Mr. Kuxhausen determined that the Gardners had caused approximately 300 corporations sole to be organized.

Mr. Kuxhausen reviewed BAM's Web site as well as documents distributed by the Gardners to individuals interested in the corporation sole plan and concluded that the Gardners were promoting an abusive tax scheme. He recommended that the Government seek a judicial decree enjoining the Gardners from promoting their corporation sole plan.

Following this recommendation, the Government brought an action in the U.S. District Court for the District of Arizona against the Gardners. On March 24, 2008, the District Court granted the Government's motion for summary judgment, denied the Gardners' motion for summary judgment, and entered an order to permanently enjoin the Gardners, individually and doing business as BAM or through any other entity, from promoting their corporation sole plan. Gardner, 2008 WL 906696. The District Court found: (1) that the Gardners had organized more than 300 corporations sole and 10 LLCs for individuals throughout the United States; (2) the Gardners made material statements regarding the tax benefits of creating corporations sole, LLCs, and trusts that they knew or had reason to know were false or fraudulent, see supra pp. 7-8; and (3) the "donation sheet" was a price list for the Gardners' services.

The District Court found that the Gardners had the educational and business background to know that the statements they had made in connection with the so-called tax benefits of their plan were false. Gardner, 2008 WL 906696, at *4. The District Court concluded that in making material statements regarding both the tax and nontax benefits of their corporation sole plan, which they knew or had reason to know were false, the Gardners were "attempting to wrench tax statutes out of context to encourage a willful misreading of the law." Id. at *5.

Finding that (1) the Gardners' customers were harmed by their reliance on the structure of the corporation sole plan, (2) the United States was harmed as a result of the Gardners' clients' failing to pay correct amounts of tax to the Treasury, and (3) the public was harmed because the IRS was forced to devote resources to identify and recover lost revenue, the District Court enjoined the Gardners from:

> (a) Organizing, promoting, marketing, or selling corporations sole or any tax shelter, plan or arrangement, that advises, assists, or encourages taxpayers to attempt to violate the internal revenue laws or unlawfully evade the assessment or collection of their federal income tax liabilities;

> (b) Making false or fraudulent statements about the allowability of any deduction or credit, the excludability of any income, or the securing of any tax benefit by the reason of participating in such tax shelters, plans or arrangements;

> (c) Encouraging, instructing, advising or assisting others to violate the tax laws, including to evade the payment of taxes; and

> (d) Engaging in conduct subject to penalty under 26 U.S.C. § 6700, i.e., by making or furnishing, in connection with the organization or sale of a shelter, plan, or arrangement, a statement the defendants know or have reason to know be false or fraudulent as to any material matter under the federal tax laws.

Id. at *6.

After the District Court enjoined the Gardners from further promotion of their corporation sole plan, the IRS, led by Mr. Kuxhausen, opened an income tax

examination of the Gardners' 2002, 2003, and 2004 tax years. As was noted supra p. 6, petitioners ceased filing Federal income tax returns after 1992. Relying on BAM's bank records, Mr. Kuxhausen conducted a bank deposits analysis and created substitutes for returns under the authority granted the IRS by section 6020(b). Thereafter the IRS mailed Mr. and Mrs. Gardner separate notices of deficiency for 2002 and 2003 on March 21, 2006, and the IRS mailed Mr. and Mrs. Gardner separate notices of deficiency for 2004 on March 30, 2007.

The Gardners timely filed petitions in this Court seeking redetermination of the IRS' income tax determinations. In Gardner v. Commissioner, T.C. Memo. 2013-67, we upheld respondent's determinations with respect to the Gardners' income tax deficiencies, as well as certain additions to tax, for years 2002, 2003, and 2004. The Gardners argued that the money deposited into the BAM bank account did not constitute taxable income to them because (1) the deposits were gifts/donations to a legitimate church, (2) they had taken vows of poverty, and (3) they acted as agents of BAM. We rejected all of these arguments. We stated that the deposits were not "donations" in that donations are transfers resulting from a detached and disinterested generosity. We held that the Gardners had received moneys from customers in consideration for organizing corporations sole, LLCs, and trusts. We also rejected the Gardners' arguments that they were agents of

BAM and did not benefit from the income because they took vows of poverty. In this regard, we found that the Gardners had exercised dominion and control over BAM's bank account and held that all taxable deposits into that account were includible in their gross income. Gardner v. Commissioner, at *16-*17.[4]

Concurrent with the income tax examination, Mr. Kuxhausen opened a section 6700 penalty investigation. He identified approximately 300 corporations sole organized by the Gardners. He was able to identify 200 purchasers of the corporation sole plan through examination of BAM's bank records. Mr. Kuxhausen gave these names to a "list keeper"[5] in the IRS' abusive transactions program who took the list to find tax returns for more than 100 of the listed individuals. Mr. Kuxhausen and a technical analyst then conducted a classification of tax returns for examination by reviewing each of the returns for potential income and/or deduction issues, such as deductions that could not be

---

[4]See Gunkle v. Commissioner, T.C. Memo. 2012-305, aff'd, 753 F.3d 502 (5th Cir. 2014), and Cortes v. Commissioner, T.C. Memo. 2014-181, where we held that other individuals who participated in the Gardners' corporation sole plan understated their taxable incomes.

[5]A list keeper is an IRS employee who takes information received by a revenue agent and determines whether the taxpayer can be traced by way of a Social Security number, employer identification number, or other tax identification number. Once the individual is identified, the list keeper determines whether that individual has filed tax returns. If returns have been filed, the list keeper acquires copies which are then reviewed by a technical analyst or a revenue agent.

justified with the income reported on a return. All returns having a discrepancy were flagged for examination. Mr. Kuxhausen found potential discrepancies with respect to income, deduction, and/or credit issues on 47 of the returns of purchasers of the Gardners' corporation sole plan and classified them for examination.

After Mr. Kuxhausen completed his investigation, the Gardners provided the IRS with the customer list, as required by the District Court. The list contained the names of 189 individuals and their church ministries that matched those on Mr. Kuxhausen's list. Mrs. Gardner informed Mr. Kuxhausen that the Gardners had organized 57 corporations sole for their customers in 2003.

The IRS entered the $47,000 section 6700 penalty assessments against Mr. and Mrs. Gardner on September 19, 2011. Each assessment was designated for year 2003. That year was selected because the investigation commenced in 2003; the year 2003 was used merely to track the investigation.

Also on September 19, 2011, respondent sent the Gardners notice and demand letters. Mrs. Gardner acknowledged that she had received the notice and demand letter addressed to her on September 23, 2011. Mr. Gardner asserted he had never received a notice and demand letter addressed to him. Neither Mr. nor Mrs. Gardner paid the section 6700 penalty.

The IRS mailed Mr. Gardner a Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing on August 27, 2012, at his last known address, via certified mail. The notice was returned as undeliverable, presumably because the Gardners had moved since the last time they had filed an income tax return. The IRS ascertained the Gardners' correct address and thereafter sent Mr. Gardner, via certified mail, a second levy notice, which Mr. Gardner acknowledged receiving. The IRS mailed Mr. Gardner a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320, via certified mail, on September 11, 2012, and filed a notice of lien against his property on the same date. Mr. Gardner acknowledged receiving the lien notice on September 13, 2012.

Mr. Gardner filed a Form 12153, Request for a Collection Due Process or Equivalent Hearing, on September 10, 2012, requesting a hearing (referred to as a section 6330 hearing), see infra pp. 21-22, as to both the lien and the IRS' intent to levy. Mr. Gardner objected to these collection actions claiming: "Do not owe. Don't know what is for." Settlement Officer Michael Freitag was assigned to Mr. Gardner's case. Before commencing work, he confirmed that he had no prior involvement with Mr. Gardner. Settlement Officer Freitag then scheduled a telephone conference for November 27, 2012. He informed Mr. Gardner that he could request collection alternatives but that in order to do so, Mr. Gardner had to

file income tax returns for 2003 through 2011 and submit to the IRS a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and Form 433-B, Collection Information Statement for Businesses. Mr. and Mrs. Gardner both participated in the section 6330 hearing on November 27. They declined to discuss collection alternatives but instead focused solely on the underlying $47,000 penalty. Settlement Officer Freitag declined to discuss the underlying liability, stating that Mr. Gardner had had a prior opportunity to dispute it but he had not done so and therefore was not permitted to raise the issue at the section 6330 hearing.

The IRS mailed Mrs. Gardner a notice of intent to levy on February 27, 2012, which Mrs. Gardner acknowledged receiving on March 3, 2012. She mailed a Form 12153 to the IRS on March 22, 2012. Her objection to the proposed collection activity was identical to that of her husband: "Do not owe. Don't know what is for."[6] Settlement Officer Bernice Mason was assigned Mrs. Gardner's case. Before commencing work, she confirmed that she had no prior involvement with Mrs. Gardner. Settlement Officer Mason then scheduled a telephone conference call for November 26, 2013. Settlement Officer Mason informed Mrs.

---

[6]We note that Mrs. Gardner also marked that she wished to challenge a filed notice of Federal tax lien although such a challenge is inapplicable in her case.

Gardner that she could request collection alternatives but that in order to do so Mrs. Gardner would need to (1) file income tax returns for 2006 through 2012, (2) provide proof that she had made estimated tax payments for 2013, and (3) complete a Form 433-A. At the section 6330 hearing before Settlement Officer Mason, both Mr. and Mrs. Gardner were present. Mrs. Gardner declined to discuss collection alternatives. Rather, Mrs. Gardner wanted to discuss only the section 6700 penalty assessment. Settlement Officer Mason concluded that Mrs. Gardner had had a prior opportunity to litigate the underlying liability and refused to allow her to raise that issue.

The IRS issued a notice of determination to Mr. Gardner on May 31, 2013, and to Mrs. Gardner on January 24, 2014. The Gardners timely filed separate petitions with the Court, and their cases were consolidated for trial, which was held in Phoenix, Arizona, on February 3, 2015.

## OPINION

### I. Introduction

These cases involve a review of respondent's determination to proceed with collection of section 6700 penalties against Mr. Gardner via lien and levy actions and Mrs. Gardner via levy action. The relevant portion of the statute provides:

## SEC. 6700. PROMOTING ABUSIVE TAX SHELTERS, ETC.

(a) Imposition of Penalty.--Any person who--

(1)(A) organizes (or assists in the organization of)--

(i) a partnership or other entity,

(ii) any investment plan or arrangement, or

(iii) any other plan or arrangement, or

(B) participates (directly or indirectly) in the sale of any interest in an entity or plan or arrangement referred to in subparagraph (A), and

(2) makes or furnishes or causes another person to make or furnish (in connection with such organization or sale)--

(A) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter, or

(B) a gross valuation overstatement as to any material matter,

shall pay, with respect to each activity described in paragraph (1), a penalty equal to the $1,000 or, if the person establishes that it is lesser, 100 percent of the gross income derived (or to be derived) by such person from such activity. For purposes of the preceding sentence, activities described in paragraph (1)(A) with respect to each entity or arrangement shall be treated as a separate activity and participation in each sale described in paragraph (1)(B) shall be so treated. * * *

The section 6700 penalty is governed by the procedural rules of section 6703, which, in general, removes section 6700 penalty assessments from the deficiency jurisdiction of this Court.[7]  However, section 6330(d)(1) provides this Court with jurisdiction to review an appeal from the Commissioner's determination to proceed with collection activity regardless of the type of underlying tax involved.  And we have held that our jurisdiction includes reviewing the Commissioner's lien and levy activities regarding penalties governed by the procedural rules of section 6703, including section 6700. Williams v. Commissioner, 131 T.C. 54, 58 n.4 (2008); Harry v. Commissioner, T.C. Memo. 2009-206; see Callahan v. Commissioner, 130 T.C. 44 (2008).  Thus, we have jurisdiction to review the notices of determination issued to petitioners.

II.    Sections 6320 and 6330 and the Standard of Review

Section 6320(a) provides that written notice of the filing of a notice of Federal tax lien must be furnished by the Secretary to the taxpayer whose property is subject to the lien.  Section 6320(b) provides that a taxpayer may thereafter

---

[7]Sec. 6703(b) provides that subch. B of ch. 63 of the Code (relating to deficiency procedures) does not apply with respect to the assessment or collection of the penalties provided by secs. 6700, 6701, and 6702.  Sec. 6703(c) provides that a taxpayer may challenge a penalty under secs. 6700 and 6701 by paying 15% of the assessed penalty, filing an administrative claim for refund, and if that claim is not granted, filing a claim for refund in the appropriate U.S. District Court.

request a hearing regarding the filing of the tax lien, and section 6320(c) provides that the hearing must be conducted pursuant to the rules of section 6330 (thus the hearing regarding the filing of a notice of Federal tax lien is referred to as a "section 6330 hearing").

Section 6330(a) provides that no levy may be made on any property or right to property of any person unless the Secretary has notified that person in writing of the right to a hearing before the levy is made (the section 6330 hearing). Section 6330(b)(3) provides that if a person requests a section 6330 hearing, that hearing shall be held before an impartial officer or employee of the IRS. During the hearing the taxpayer may raise any relevant issue, including appropriate spousal defenses, challenges to the appropriateness of the collection action, and collection alternatives, including offers-in-compromise. Sec. 6330(c)(2)(A).

A taxpayer is precluded from contesting the existence or amount of the underlying tax liability at the section 6330 hearing unless the taxpayer did not receive a notice of deficiency for the tax in question or did not otherwise have an opportunity to dispute the underlying tax liability. Sec. 6330(c)(2)(B); see also

Sego v. Commissioner, 114 T.C. 604, 609 (2000).[8] In the instant cases, the underlying liabilities are the section 6700 penalties imposed on petitioners.

The IRS concedes that (1) petitioners did not have a prior opportunity to contest the section 6700 penalties; (2) petitioners may challenge the existence and/or amounts of the underlying liabilities (i.e., the section 6700 penalties), and (3) the Court should use a de novo standard of review.[9] We accept these concessions, and on that basis we conclude we have jurisdiction to consider the existence and amounts of the section 6700 penalties assessed against petitioners.

III.    Burden of Proof

To prevail, respondent must prove: (1) that petitioners are liable for the section 6700 penalties and (2) the amounts of the penalties.

Section 6703(a) provides that the IRS bears the burden of proving that any person is liable for a penalty pursuant to section 6700.[10] Respondent argues that

---

[8]We have interpreted the phrase "underlying tax liability" to include any amounts a taxpayer owes pursuant to tax laws that are subject to the Commissioner's collection activities. Katz v. Commissioner, 115 T.C. 329, 338-339 (2000).

[9]The IRS also concedes that the record rule is inapplicable when a de novo review is conducted. See Jordan v. Commissioner, 134 T.C. 1, 8-9 (2010).

[10]The Court of Appeals for the Ninth Circuit affirmed a decision in which a District Court applied a preponderance of the evidence standard in a sec. 6700

(continued...)

he has met his burden by (1) establishing by the defense of collateral estoppel that the Gardners engaged in conduct which makes them liable for the section 6700 penalties, and (2) presenting evidence at trial which establishes that each petitioner engaged in conduct making himself/herself liable for the section 6700 penalty no fewer than 47 times.

If respondent proves that violations of section 6700 have occurred, a penalty of $1,000 applies to each violation unless petitioners establish that the amount of gross income derived from the prohibited activity was less. See sec. 6700(a) (flush language). Petitioners bear the burden of proving that the amount derived from each prohibited activity was less than $1,000. See id.

IV.    Application of the Section 6700 Penalty

A.    Penalty Liability

In applying section 6700, courts have identified four elements the Government must establish: (1) organization of or participation in the sale of certain investment plans or arrangements; (2) statements regarding the allowability of deductions or tax credits, the excludability of income, or the securing of other

---

[10](...continued)
case. Bond v. United States, 872 F.2d 898 (9th Cir. 1989).

tax benefits; (3) knowledge or reason to know the statements are false; and (4) that the statements pertain to a material matter. United States v. Stover, 650 F.3d 1099, 1107 (8th Cir. 2011); United States v. Estate Pres. Servs., 202 F.3d 1093, 1098 (9th Cir. 2000).

Section 6700 makes no mention of whether a participant must rely on the promoter's statements or underreport his/her tax as a result of participation in the promotion. However, the legislative history of the section states that the actions of the plan participants are not relevant to the application of the section. "There need not be reliance by the purchasing taxpayer or actual under-reporting of tax. These elements have not been included because they would substantially impair the effectiveness of this penalty. Thus, a penalty can be imposed based upon the offering materials of the arrangement without an audit of any purchaser of interests." S. Rept. No. 97-494 (Vol. 1), at 267 (1982), 1982 U.S.C.C.A.N. 781, 1015.

Respondent posits that he has established the Gardners' liability through the judicial doctrine of collateral estoppel. Respondent states in his brief that "[a]fter applying collateral estoppel, the only issue for the Court to decide is if petitioners' false statements were made in connection with at least 47 of the corporation sole arrangements."

Collateral estoppel[11] is an affirmative defense barring a party from relitigating an issue determined against that party in an earlier action, even if the second action differs significantly from the first one. Black's Law Dictionary 256.[12] The collateral estoppel doctrine is also known as issue preclusion. Once an issue of fact or law is "actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana v. United States, 440 U.S. 147, 153 (1979) (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979)). Thus, if an issue has been resolved by a court, the issue will not be taken up again by a subsequent court. The Commissioner may assert the doctrine of collateral estoppel as an affirmative defense even though the Commissioner was not a party to the prior proceeding. See Brotman v. Commissioner, 105 T.C. 141, 148 (1995).

_____

[11]Sec. 6330(c)(4) bars a person from raising in a collection hearing an issue that was raised and considered at a previous hearing or in any other administrative or judicial proceeding in which the person seeking to raise the issue meaningfully participated, thus codifying the doctrines of collateral estoppel and res judicata. See Katz v. Commissioner, 115 T.C. at 339; McIntosh v. Commissioner, T.C. Memo. 2003-279.

[12]Respondent alleged collateral estoppel as an affirmative defenses in both cases in his respective first amendments to answer, both filed January 23, 2015, by leave of the Court pursuant to Rule 41(a).

Collateral estoppel applies in a factual dispute if the following conditions are satisfied: (1) the issue in the second suit is identical in all respects with the one decided in the first action; (2) there is a final judgment rendered by a court of competent jurisdiction; (3) the party against which collateral estoppel is asserted is either a party to the prior judgment or the privy of a party to the prior judgment; (4) the parties actually litigated the issues and the resolution of these issues was essential to the prior decision; and (5) the controlling facts and applicable legal rules remain unchanged from those in the prior litigation. Peck v. Commissioner, 90 T.C. 162, 166-167 (1988), aff'd, 904 F.2d 525 (9th Cir. 1990).

We agree with respondent that all five Peck elements are present in these cases. With respect to the first element, the issues in both the District Court case and these cases are identical. Section 7408(a) empowers a court to enjoin any person from further engaging in "specified conduct". Specified conduct is defined in section 7408(c) and includes any action or failure to take action which is subject to penalty under section 6700. Sec. 7408(c)(1). To enjoin the Gardners from engaging in promoting and selling of an abusive tax shelter plan or arrangement, the District Court necessarily determined that they engaged in conduct subject to the section 6700 penalty. As the District Court stated in its order:

Section 7408 * * * authorizes a court to enjoin persons who have engaged in conduct subject to penalty under Code §6700 from engaging in further such conduct or any other conduct subject to penalty under the Code if the Court finds that injunctive relief is appropriate to prevent recurrence of the conduct. * * * Based on the evidence presented by the parties, the Court finds that the defendants are engaging in conduct in violation of Code §6700.

Gardner, 2008 WL 906696, at *5.

With respect to the second element, the District Court's order, upheld on appeal by the Court of Appeals for the Ninth Circuit, is a final judgment by a court of competent jurisdiction. With respect to the third element, petitioners and the Government were both parties to the prior case (and the IRS may claim collateral estoppel even if a different Government agency participated in the prior case). See supra p. 26. With respect to the fourth element, the record makes it clear that petitioners fully disputed and the parties fully litigated all issues with respect to the injunction. With respect to the fifth element, there has been no modification to section 6700 or the regulations promulgated thereunder since the prior litigation. The facts of these cases have not changed since the end of the prior litigation. As respondent points out in his brief: "The §6700 penalty naturally flows from the injunction granted by the District Court. The District Court determined that the Gardners violated §6700. Section 6700 provides that any person who violates §6700 'shall pay' a penalty."

Petitioners reply that collateral estoppel is inapplicable in these cases. "It is clear there are no abusive transactions to give rise to the penalty. Respondent did not prove the abusive transaction. What the respondent is passing off as proof is the District Court said that the Gardners engaged in conduct that violates IRC § 6700." Petitioners then argue that the corporation sole plan was not an abusive tax shelter. However, petitioners' position is precisely what the doctrine of collateral estoppel was intended to avoid: relitigating closed questions. Petitioners repeated in this Court the same argument that they made in the District Court as well as the same false statements made to their customers that led the District Court to enjoin them.[13] We thus hold that the doctrine of collateral estoppel applies in the instant situation and that the District Court's determination is conclusive. Consequently, respondent has met his burden of establishing that the Gardners are liable for the section 6700 penalties.

---

[13]For example, in their brief, petitioners admit that they advised their customers to use the structure reviewed by the District Court, see supra p. 12, in which LLCs and trusts are used to divert up to 95% of their business income to a church, making it "tax free". Petitioners argue this admission supports their position because "[t]he statements made of Mrs. Gardner with respect to the benefits of a religious corporation sole are clearly consistent with current law." The District Court came to a different conclusion: that the advice given by the Gardners constituted a false or fraudulent statement under sec. 6700.

B.     Amount of Penalty

A taxpayer is liable for a $1,000 penalty for each violation of section 6700 unless the taxpayer can establish that the amount of gross income derived from the activity was less than $1,000.  Sec. 6700(a).  The District Court did not address the penalty amount for which the Gardners would be liable although it did find that the Gardners had organized more than 300 corporations sole for their customers.

To impose a $47,000 penalty against each petitioner, respondent is obligated to establish that each petitioner committed 47 acts which made him/her liable for the section 6700 penalty.  At trial Mr. Kuxhausen did just that.  He explained in detail how he and his colleagues examined BAM's bank accounts, customers' canceled checks, and customers' tax returns and how he and his colleagues were able to identify 47 corporations sole organized by petitioners and correlate payments made by the customers.  Mr. Kuxhausen classified only 47 income tax returns because they had the most potential for examination adjustments (i.e., most likely to have issues with income, deductions, and/or credits).

The Gardners maintain that the IRS did not establish that any of the individuals who purchased the corporation sole plan used the plan to avoid Federal income tax.  The Gardners allege that the purchasers were legitimate

ordained bishops, pastors, elders, etc. who had purchased the plan for the governance of their respective churches and/or ministries. In this regard, four of the individuals that Mr. Kuxhausen identified testified on petitioners' behalf. Each individual credibly testified that he did not use his respective corporation sole to avoid taxes, but rather each individual used his corporation sole to administer his ministry in furtherance of what are unquestionably good works. The IRS audited the returns of all four individuals. None had any corporation sole-related adjustments made to his tax return. Indeed, one witness received a tax refund after his audit.

The focus of section 6700, however, is not on the recipient; it is on the promoter of the abusive tax shelter. As the legislative history of the statute makes clear, a promoter is liable for the section 6700 penalty even if the IRS does not audit the return of the purchaser. Indeed, even if the purchaser makes no use of the tax shelter and does not underreport his/her tax, the promoter is still liable for the section 6700 penalty.[14] See S. Rept. No. 97-494 (Vol. 1), supra at 267, 1982 U.S.C.C.A.N. at 1015.

---

[14]In any case, petitioners' witnesses acknowledged they received and reviewed the information contained in the corporation sole plan, information that the District Court concluded was false.

Section 6700(a)(2)(B) provides that if a tax shelter promoter establishes that he/she derived less than $1,000 with respect to each promotional action, the section 6700 penalty shall be that lesser amount. The Gardners have not done so.

C.    Conclusion

The District Court determined that the Gardners' corporation sole plan violated section 6700, and we so hold. The IRS established that the Gardners sold the corporation sole plan to those 47 individuals, and we hold the Gardners sold the corporation sole plan to at least 47 individuals.

V.    Year at Issue

The notices of determination sent to the Gardners state that the year involved is 2003. At trial we inquired how the IRS selected 2003 when the Gardners sold their corporation sole plan in 2002, 2003, and 2004. In his brief, respondent replied that the IRS investigation commenced in 2003 and for administrative reasons the IRS tracked the Gardners' section 6700 penalties in tax modules designated year 2003.[15] Respondent posits that section 6700 penalties are

---

[15]Respondent states in his brief that the Form 8278, Assessment and Abatement of Miscellaneous Civil Penalties, which revenue agents are required to complete when requesting an assessment of the sec. 6700 penalty, requires that the revenue agent assign a year to which the penalty applies. The form is not processed if a year is not provided.

not assessed for discrete taxable years but rather for conduct and transactions that may occur over one or more taxable years.

Courts have examined the period for a section 6700 penalty assessment before. In Planned Invs., Inc. v. United States, 881 F.2d 340 (6th Cir. 1989), the Court of Appeals for the Sixth Circuit was faced with a notice and demand regarding a section 6700 penalty assessment which did not specify the period involved. Subsection (a) of section 6671, which governs the assessment of all penalties provided in subchapter B of chapter 68, including those of section 6700, provides that such penalties shall be paid upon notice and demand and shall be collected as taxes. Chapter 63 of the Code, specifically sections 6201 through 6245, governs assessment of taxes; consequently, that chapter of the Code controls how the penalty is assessed.[16] Similarly, chapter 64, which sets forth the rules for the collection of taxes, governs the collection of the section 6700 penalty. Specifically, section 6303(a) of chapter 64 provides: "After the making of an assessment of a tax pursuant to section 6203, [the IRS shall] give notice to each person liable for the unpaid tax, stating the amount and demanding [the] payment

---

[16]The Court of Appeals noted that ch. 63 provides for two methods of assessment: (1) subch. B's special procedure for assessment of income, estate, and gift taxes, and (2) subch. A's general procedure for the assessment of other taxes. However, subch. B is inapplicable pursuant to the provisions of sec. 6703(b). See Planned Invs., Inc. v. United States, 881 F.2d 340, 343 (6th Cir. 1989).

thereof." The Court of Appeals in <u>Planned Invs., Inc.</u>, 881 F.2d at 344, concluded:

"Section 6303 does not prescribe any particular form of notice. Treasury

Regulations promulgated under the authority of §6303 merely parrot the statutory

language that the notice shall state the amount of the tax and demand payment

thereof. 26 CFR §301.6303-1(a)." The Court of Appeals held:

> Construing the plain language of the statutes and regulations outlined above, it becomes evident that the form of notice of assessment of a §6700 penalty requires only a statement of the amount of the penalty and a demand for payment. It is also clear that the notice sent to the plaintiff in this case complied with these requirements as the notice identified the amount assessed and demanded payment.

<u>Id.</u> The Court of Appeals' analysis did not end there. Notice must also meet the

general "fairness" requirement of due process. The Court of Appeals in <u>Planned</u>

<u>Invs., Inc.</u> stated that notices that contain technical defects are valid where the

taxpayer has not been prejudiced or misled by the error and is afforded a

meaningful opportunity to litigate his claims. <u>Id.</u>; <u>see also</u> <u>Sage v. United States</u>,

908 F.2d 18, 23 (5th Cir. 1990) (full opportunity to contest the amount of a section

6700 penalty constituted basic fairness).

The rationale of <u>Planned Invs., Inc.</u> was followed by several other Courts of

Appeals. <u>See</u> <u>In re MDL-731 Tax Refund Litig. of Organizers & Promoters of</u>

<u>Inv. Plans Involving Book Props. Leasing</u>, 989 F.2d 1290, 1301 (2d Cir. 1993)

("The Internal Revenue Code thus does not obligate the IRS to assess Section 6700 penalties only on income actually earned during discrete taxable periods."); Sage, 908 F.2d 18 (finding the Court of Appeals for the Sixth Circuit's reasoning in Planned Invs., Inc. persuasive); Gates v. United States, 874 F.2d 584, 588 (8th Cir. 1989) ("Indeed, it does not appear that section 6671 dictates any particular assessment period for section 6700 penalties, which do not relate to any specific tax."). We are cognizant that the Court of Appeals for the Ninth Circuit, to which appeal in this matter would normally lie, has taken a position that may appear contrary to this precedent. In Bond v. United States, 872 F.2d 898, 901 (9th Cir. 1989) (issued before Planned Invs., Inc. or the other cases cited supra), the Court of Appeals for the Ninth Circuit suggested that section 6700 penalties should be assessed on an annualized basis. The court ruled that the section 6700 penalty was properly calculated as a percentage of the gross income derived from the sales made during the year or years involved.

The language of section 6700 on which the Court of Appeals opined in Bond has been superseded by an amendment to section 6700. In 1989 Congress added the flush language to section 6700(a), to clarify that

> activities described in paragraph (1)(A) [referring to organization of a
> partnership or other entity, any investment plan or arrangement, or
> any other plan or arrangement] with respect to each entity or

arrangement shall be treated as a separate activity and participation in each sale described in paragraph (1)(B) [participation in the sale of any interest in an entity or plan or arrangement referred to in section 6700(a)(1)(A)] shall be so treated.

Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239, sec. 7734(a)(1)-(3), 103 Stat. at 2403.

We believe it proper to follow herein the analysis in Planned Invs., Inc. and the other Courts of Appeals opinions that have followed it. In these cases, the notices of determination identified the amounts assessed and made it clear that payment was required. Although the tax year included in the notice of determination was not relevant to petitioners' cases, the IRS provided a cogent administrative reason why a year was identified (i.e., administrative requirements) and the Gardners were both knowledgeable as to all relevant facts and arguments of the IRS and had a full opportunity to contest the $47,000 penalties at trial before us. In sum, we find the notices of determination to proceed with lien and levy actions that were provided to the Gardners with respect to the section 6700 penalties were adequate.[17]

_____

[17]We note that in the stipulation of facts, petitioners acknowledged they organized at least 67 corporations sole during 2003. And at trial petitioners stated they organized 57 corporations sole during 2003. In either case, petitioners were well aware of the situation.

VI.    Other Matters

The remainder of these cases requires our review of the actions of the IRS' Appeals Office.  When the Court conducts a de novo review of the underlying liability, we review all determinations not involving the underlying liability for abuse of discretion.  Craig v. Commissioner, 119 T.C. 252, 260 (2002).  An action constitutes an abuse of discretion if it is arbitrary, capricious, or without sound basis in fact or law.  Giamelli v. Commissioner, 129 T.C. 107, 111 (2007).  The Court of Appeals for the Ninth Circuit has specifically held that for section 6330 cases the scope of review is limited to the administrative record where the standard of review is abuse of discretion.  See Keller v. Commissioner, 568 F.3d 710, 718 (9th Cir. 2009), aff'g T.C. Memo. 2006-166, and aff'g and vacating decisions in related cases.

In deciding whether the IRS settlement officers abused their discretion in sustaining the collection actions, we consider whether they:  (1) properly verified that the requirements of any applicable law or administrative procedure have been met; (2) considered any relevant issues the taxpayer raised; and (3) determined whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concerns of the person that any collection action be no more intrusive than necessary."  See sec. 6330(c)(3).

Mr. Gardner asserts that he did not receive notice and demand for payment of his section 6700 penalty. However, Settlement Officer Freitag reviewed the Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, included in Mr. Gardner's administrative file. It states that a statutory notice of balance due (i.e., notice and demand) was mailed to Mr. Gardner on September 19, 2011. A settlement officer may rely on a Form 4340 to verify that a valid assessment was made and that notice and demand was sent to the taxpayer in accordance with section 6303. Nestor v. Commissioner, 118 T.C. 162, 166 (2002). Absent a showing of irregularity, a transcript with this information is sufficient to establish that the procedural requirements of section 6330 have been met. Id. at 167. The Gardners raised no other verification issues, and at trial the IRS settlement officers each testified that they reviewed each petitioner's administrative file and verified that the requirements of applicable law and administrative procedure had been met. The settlement officers also confirmed at trial that the lien and proposed levy collection actions each balanced the need for efficient collection of taxes with the Gardners' concerns that the collection actions be no more intrusive than necessary.

VII.    Conclusion

After considering the merits of petitioners' arguments, we hold that petitioners are each liable for a $47,000 section 6700 penalty.  Because we find no abuse of discretion in the settlement officers' determinations, we sustain the IRS' lien against Mr. Gardner and hold that the IRS' proposed levy actions against both Gardners may proceed.

We have considered all of petitioners' arguments, and to the extent not discussed herein, we find them to be without merit and/or irrelevant.

To reflect the foregoing,

Decisions will be entered

for respondent.